INTERNATIONAL ENGINEERING
COMPANY, Plaintiff,

v.

Elliot L. RICHARDSON et al.,
Defendants.

Civ. A. No. 927-73.

United States District Court,
District of Columbia.

July 10, 1973.

Robert H. Turtle, James M. McHale, Washington, D. C., for plaintiff.

Harold H. Titus, Jr., U. S. Atty., Leonard W. Belter, Asst. U. S. Atty., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

This action arose out of a Complaint for a Declaratory Judgment and Injunctive Relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 and 28 U.S.C. § 1331 and the Administrative Procedure Act (5 U.S.C. § 702) by Plaintiff, International Engineering Company (hereinafter IEC or Plaintiff) against Defendants, Elliot Richardson, Secretary of Defense and Robert Seamans, Jr., Secretary of the Air Force (hereinafter Government or Defendants). Plaintiff seeks equitable relief to restrain Defendants from releasing to the Defense Documentation Center three Final Technical Reports delivered by Plaintiff to the Air Force in connection with Government Contract F33657–69–C–1290 (hereinafter referred to as Con-

tract). Plaintiff delivered the Reports with Restrictive Legends affixed that purported to limit the Government's use of the research data contained therein to circulation among Government Agencies only. Plaintiff alleges that it has a "proprietary" interest in portions of the Reports and that the Contracting Officer's decision to the contrary reflected an unconstitutional application of the Armed Services Procurement Regulations by depriving IEC of the due process to which it was entitled. Alternatively, Plaintiff argues that if the Armed Services Procurement Regulations permit the Contracting Officer to remove IEC's "proprietary" legend without requiring a hearing, such regulations violate the due process clause of the Fifth Amendment. The Air Force contends that Plaintiff was afforded adequate due process consistent with Armed Forces Regulation (ASPR) § 7-104.-9(a), Rights in Technical Data, incorporated by reference into the Contract. Defendant urges that the technical data in issue is part of the very material for which the Government contracted and paid, and that the Government has every right to distribute it to other Defense Department contractors.

Plaintiff seeks a Preliminary Injunction and Defendants seek to have the Court dismiss the suit, or enter Summary Judgment in their favor. Plaintiff additionally wants to depose two Air Force officials but agrees to delay the depositions pending resolution of Defendant's Motion to Dismiss.

Before turning to the questions presented, several facts should be mentioned. On February 8, 1968, IEC submitted a technical proposal to the Air Force reflecting IEC's development to date of a process for guiding bombs or missiles with a Loran C/D system (hereinafter LOMISS). As a result of the proposal, the Air Force entered into a contract with IEC effective May 29, 1969 to provide final and interim reports of a flight test evaluation of the LOMISS system. From a data certificate executed by the parties March 3, 1969 and not included in the express terms of the Contract, it appears that IEC agreed to furnish with unlimited rights to the Government the information required to comply with the initial data requirements of the Contract. The Contract included at Part V a clause entitled "Data Provisions" which purported to delineate the rights of the parties in data under the Contract to the exclusion of any documents not expressly provided for in the Contract. The most important Contract provision relating to the respective rights in data was ASPR § 7-104.9(d), incorporated by reference into the Contract, with the pertinent provisions set forth as follows:

"(d) *Unmarked or Improperly Marked Technical Data*

(1) Technical data received without a restrictive legend shall be deemed to have been furnished with unlimited rights. However, the contracting officer may permit the contractor to place a restrictive legend on such data within six months of its delivery if the contractor demonstrates that the omission of the legend was inadvertent and the use of the legend is authorized.

(2) Technical data received with a restrictive legend not permitted by the terms of the contract shall be used with limited rights pending inquiry to the contractor whose name appears on the data as the originator. If no response to a properly directed inquiry has been received within 60 days, or if the response fails to show that the restriction was authorized, the cognizant Government personnel shall obliterate such legend, notify the contractor accordingly, and thereafter may use such data as if it were acquired with unlimited rights."

The above Rights in Technical Data clause also provides that IEC would have a property interest in and that Air Force would have only limited rights to the following:

". . . technical data pertaining to items, components, or processes developed at private expense." ASPR 7-104.9(a).

Under the "Limited Rights" provision, the Government is entitled to circulate technical data generated at IEC's expense among Government personnel but not among Government contractors in competition with IEC.

This Contract was modified twice in 1970 and 1971 to involve testing of more recently developed IEC processes and components. At the time the Final Report under the first contract modification was to be filed, the Air Force Project Engineer requested IEC to provide information on processes and components to facilitate the Air Force's evaluation of the results of the simulation test program. IEC responded by providing such information in the Final Report but affixed to it a "Proprietary Notice" indicating IEC developed this data at private expense. On two other occasions IEC submitted Final Reports containing what IEC considered extra-contractual information on processes and components. Accordingly, restrictive legends indicating a proprietary interest were marked on the material. After submission of the first report and, again, after the later reports were given to the Government, the Contracting Officer notified IEC by letter that the Air Force had "unlimited rights" to the Final Reports necessitating the removal of the restrictive legends unless IEC furnished substantiation of its "proprietary notice." On June 26, 1972 the Contracting Officer met with IEC representatives to provide them with the opportunity to substantiate the "limited rights" legends contained in the three Final Reports. At the conclusion of the meeting, the Contracting Officer stated that IEC still had failed to substantiate its claim and that further material should be submitted. IEC failed to submit more information by July 17, 1972, as promised. On October 2, 1972, the Contracting Officer informed IEC that the Government would treat the data with "unlimited rights." By agree-

ment, the Government will treat the data in question with "limited rights" pending a decision by the Court on Plaintiff's Motion for a Preliminary Injunction.

## QUESTIONS PRESENTED

1. Whether the Court lacks jurisdiction over the subject matter of this suit?, and

2. Whether the Contracting Officer's failure to state reasons for his decision to eradicate IEC's restrictive legends frustrates effective judicial review?

## CONCLUSIONS

1. *The Applicability of the Administrative Procedure Act Serves as a Waiver of Sovereign Immunity.*

As a threshold matter in this case, the Court is confronted with questions of sovereign immunity and preclusion of judicial review in relation to the actions of a Contracting Officer under a Government Contract. Plaintiff seeks review of the Contracting Officer's determination of Plaintiff's rights in technical data pursuant to ASPR 7–104.9(a), under section 10 of the Administrative Procedure Act, 5 U.S.C. § 702 (Supp. IV 1965–68), which provides:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

Plaintiff asserts that the action of the Contracting Officer in deciding to strike IEC's restrictive legends from the Final Reports prepared by IEC under the Contract and disclose those reports to the public through the Defense Documentation Center was arbitrary and capricious, without authority and without due process of law insofar as Plaintiff was not given adequate notice or proper hearing before its property was appropriate.[1] Plaintiff additionally pleads that

---

1. Although the Court is not at this time deciding Plaintiff's contention that a formal administrative hearing is required

in this case, it is important for the Court to outline some thoughts on this legal issue, while reserving the opportunity to

the Contracting Officer acted without due process of law in issuing his decision without indication as to what factors he considered relevant, what weight be attached to those factors, or how he arrived at his conclusion.

■ In support of jurisdiction under the APA, Plaintiff has shown that it is "aggrieved" by the Contracting Officer's acts within the meaning of a relevant statute, the Armed Services Procurement Act, 10 U.S.C. chapter 137, and the Armed Services Procurement Regulations (ASPR) promulgated thereunder, specifically ASPR 9–203(a)–(d) which has the force of law in this Contract.[2] Therefore it is the Court's conclusion that the provisions of section 10 are applicable. In such a situation section 10 of the APA serves as a waiver of sovereign immunity. Scanwell Laboratories v. Shaffer, 137 U.S.App.D. C. 371, 424 F.2d 859 (1970); Estrada v. Ahrens, 296 F.2d 690 (5th Cir. 1961).

■ The Government urges that Scanwell is inapposite to the case at bar since Plaintiffs in Scanwell were contractors who lost contract awards because of alleged arbitrary Government conduct under regulations designed to control the contract letting process. However, the Court discerns nothing in Defendants' argument to support the proposition that a Government official's conduct under federal regulations incorporated by reference into a Government

make a final decision on the basis of supplementary submissions and oral argument. Beginning with the general constitutional norm that government may not act against an individual before granting him a hearing, the Court believes that in a manner consistent with the ASPR 37–104.9(d) procedure agreed to by the parties, notice and an opportunity to be heard were dutifully provided. Therefore, the Court's focus is on the nature of that opportunity to be heard. An immediate issue which arises is whether the informal procedure administered by the Contracting Officer resulted in a decision based upon incomplete information, untested by the adversary process. A second question is whether an adversary hearing as a functional matter offers a better method for resolving the instant factual dispute than the informal conference held June 26, 1972 with all interested parties in attendance. Finally, the Court is concerned whether the requirement of a formal hearing where a contractor's restrictive legends are challenged by a contracting officer is inappropriate to the contractual nature of the dispute and creates an unnecessary impediment to the workings of the Government's procurement operation. The United States Court of Claims has indicated that where a hearing is not required in the Contracting Officer's resolution of a contract dispute and his decision is appealable to the Armed Services Board of Contract Appeals, a contractor's allegation that the Contracting Officer acted unconstitutionally in assigning the contractor an undeterminable burden of proof simply will not stand.

Plaintiff in Newport News, infra, footnote 2, like the contractor here, argued that it was impossible to inveigh against the Contracting Officer's decision when the substance of that decision was unknown.

2. The Armed Services Procurement Regulations called to the Court's attention provide a procedure whereunder the Contracing Officer determined contested rights in technical data. Defendant has not directed the Court to any provisions of the Armed Services Procurement Act, supra, or the Administrative Procedure Act, supra, which suggest that an ASPR once incorporated as a contract clause parts with all identity as a federal regulation governing certain acts of Contracting Officers. Several cases suggest that the ASPR is law governing "the award and interpretation of contracts as fully as if it were made a part thereof." Chris Berg, Inc. v. United States, 426 F. 2d 314, 317, 192 Ct.Cl. 176 (1970); G. L. Christian & Assoc. v. United States, 312 F.2d 418, 160 Ct.Cl. 1, reh. denied, 320 F.2d 345, 160 Ct.Cl. 58, cert. denied, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963). In addition, it appears that the ASPR is binding on Government officials. Newport News Shipbuilding & Dry Dock Co. v. United States, 374 F.2d 516, 179 Ct.Cl. 97 (1967). Furthermore, the Court believes that the Rights in Technical Data Clause discussed in the text of this Opinion is intended to protect the property interests of contractors like Plaintiff and can be invoked by them against an administrative determination contrary to the regulation's terms. Cf. Fletcher v. United States, 392 F.2d 266, 183 Ct.Cl. 1 (1968).

Contract is not reviewable under the APA. Nothing in the APA or cases with which the Court is familiar support Defendants' contention. Although the case is not directly on point, the Court in *Scanwell* does identify the primary concerns a reviewing court should have in deciding questions of jurisdiction. The Court there looked to the injury to Plaintiff's economic livelihood and the public's interest in preventing the granting of contracts through arbitrary or capricious action. Here, Plaintiff alleges prospective loss of a complex system for guiding missiles developed by Plaintiff over several years at great expense. Additionally, the public's interest is apparent in preventing arbitrary or capricious action by Government officials in distributing the proprietary data of contractors submitted to the Government for national security programs. Thus, the alleged threat of legal wrong to Plaintiff's interests are sufficient to warrant some means of judicial redress.

■■ In exercising jurisdiction over Plaintiff's claim, the Court provides the "aggrieved" contractor with the only forum in which it can obtain the relief sought and thereby prevent irreparable damage to its competitive position. Neither the Armed Services Board of Contract Appeals nor the Court of Claims has jurisdiction to grant Plaintiff the injunctive relief sought in the present case. For example, the Armed Services Board of Contract Appeals is authorized to grant relief in the form of an equitable adjustment under a substantive provision of the contract such as the "disputes" article clause in interaction with the "changes" articles in the contract at bar. See *The Breed Corp,* ASBCA No.s 14074 and 14344. In *Breed,* the Government argued that the Board lacked jurisdiction to grant the relief in the nature of an injunction as requested by appellant. Indeed, the Government advised the Board that only the United States District Court could provide injunctive relief against the Government. The Board agreed that the relief re-

quested was beyond the delegation of the Board's "Charter" and denied appellant's motion to stay the Contracting Officer's actions in that case. Now the Government chooses to come before the Court and argue that this forum is not authorized to issue the relief sought. Thus the Government places Plaintiff in a "Catch 22" predicament plainly contrary to the interests of justice. Consequently this Court holds that jurisdiction indeed exists in the instant matter.

It should be noted that the Court of Claims is not expressly authorized by Congress to grant the kind of relief sought here. United States v. King, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Other avenues of review are also blocked; Plaintiff sought administrative relief from the Secretary of the Air Force's Deputy Counsel and from the Comptroller General, both of whom denied the availability of review, the latter because IEC's claim for relief was not made in connection with a procurement.

Therefore, for the reasons stated above, the Court concludes that it has jurisdiction over the parties and the subject matter of this action. 28 U.S.C. §§ 1331, 1361, 2201 and 2202, and 5 U.S.C. § 702.

2. *The Contracting Officer's Failure to Elucidate the Basis for His Decision Prevents the Court's Expeditious Review of the Record.*

■ The record reflects the Contracting Officer's opinion that IEC made a full and complete presentation in an attempt to substantiate its claim that the Government has only "limited rights" to certain material contained in the three Final Reports at issue. However, his response to IEC's presentation at the June 26, 1972 meeting with all interested parties present was that IEC had not "furnished the substantiation required for a determination that the Government was entitled to only 'Limited Rights' to the data in question." (Affidavit of

Raphael Harsfield, May 16, 1973). Further submissions by Plaintiff were also determined by the Contracting Officer to contain no substantiation to justify IEC's claim. In his responses, the Contracting Officer has offered conclusions unsupported by a statement of the determinative reasons. See Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973). In light of the extensive technical material before the Court which documents the correspondence between IEC and the Contracting Officer, the 'Court finds the Contracting Officer's brief conclusion inadequate for effective review of the Contract materials at issue and the Armed Services Procurement Regulations which bear on those materials.

In an area as complex as Government procurement, the Court needs the benefit of the Contracting Officer's underlying reasoning in order to expeditiously review the record. To allow brief indications of reasons for what constitutes final agency action is to impede the Court's participation in the " 'partnership' in furtherance of the public interest" that court and agency must share. Greater Boston Television v. FCC, 143 U.S.App.D.C. 383, 444 F.2d 841, 851–852, cert. denied, 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971). The Contracting Officer's conclusory response to Plaintiff's submissions informed neither Plaintiff nor the Court of the reasons Plaintiff's descriptions of materials developed at private expense were inadequate. Without a more sufficient indication of the basis of his decision the Court cannot effectively review the 'Contracting Officer's exercise of his statutory power to determine whether his action embodied an abuse of discretion or error of law.

The Court has scrutinized the asserted justification for the Contracting Officer's practice of not explaining his reasons for distinguishing Contract material developed at private expense from that generated by Government funding and is dissatisfied with the Government's position. Although, as the Government contends, it may be extremely burdensome for the Contracting Officer to investigate the accounting records of the contractor, the instant case has convinced the Court that there are situations of fact and characteristics of action in which a Contracting Officer's one sentence response to a detailed record undermines effective judicial review. Here, for example, no extensive investigation was demanded of the Contracting Officer since the contractor attempted to identify the source of expense for each page of data contained in the Reports. However, his impressions of the contractor's efforts, particularly at the June 26, 1972 conference, need elucidation and that need for the purposes of judicial review, outweighs any Governmental interest in avoiding administrative burdens.

Furthermore, the Government's reassurance to the Court that, as a matter of policy, the Government employees involved rarely challenge restrictive legends because of the resulting administrative burden falls short of its mark. The Court firmly believes that an articulated basis for each of the Contracting Officer's decisions will offset any risk of an arbitrary departure from the aforementioned policy to the detriment of a contractor's property interests. See Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584 (1971); Environmental Defense Fund v. E.P.A., 150 U.S.App.D.C. 348, 465 F.2d 528 (1972).

■ Assuredly, the Court has no intention of substituting its judgment for that of the Contracting Officer, but it is the Court's duty to consider whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S. Ct. 814, 824, 28 L.Ed.2d 136 (1971). Given that duty, the Court must have a

meaningful indication in the record of the basis upon which the Contracting Officer acted. As Judge Leventhal recently commented in Portland Cement Association v. Ruckelshaus, (Slip Opinion No. 1073, June 29, (1973): "While we remain diffident in approaching problems of this technical complexity, * * * the necessity to review agency decision, if it is to be more than a meaningless exercise, requires enough steeping in technical matters to determine whether the agency 'has exercised a reasoned discretion.' Greater Boston TV v. FCC (*supra*)." Similarly in the case at bar, the Court must have a clarification of Armed Services Procurement Regulations' impact on Plaintiff's efforts to substantiate its claim that explains what factors were dispositive of the claim raised by Plaintiff.

The Court's requirement that the Contracting Officer provide a statement of reasons, where a contractor has attempted to substantiate its claim within the period provided under ASPR § 9–202.-3(d) and the Contracting Officer determines that effort inadequate, will not defeat countervailing Government interests. The time and energy expended by the Contracting Officer in complying with the Court's demand that he provide a basis for his decision threatens no harm to the public's health and safety, or to national security, and does not compromise the performance of a vital governmental function. But the benefit of requiring such explanation is fundamental to our system of justice; there will be both a reduction in the possibility of error and the protection of the contractor against the precipitate use of governmental authority.

For the above reasons, the Court finds it necessary to remand the subject matter of this litigation to the Contracting Officer for a statement of reasons regarding his actions on the Contract before the Court.