NATURAL RESOURCES DEFENSE COUNCIL, INC., et al., Plaintiffs,

v.

SECURITIES AND EXCHANGE COMMISSION et al., Defendants.

Civ. A. No. 409–73.

United States District Court, District of Columbia.

Dec. 9, 1974.

Roger S. Foster, J. G. Speth, Edward L. Strohbehn, Jr., Washington, D. C., for plaintiffs.

Glynn L. Mays, Washington, D. C., for SEC.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### I. *Introduction*

This action comes before the Court on Plaintiffs' Motion for Summary Judgment. Plaintiffs are public interest groups which want information about corporations in order to make socially responsible investment decisions, to further public education, and other purposes. They wish to use the public files of the Securities Exchange Commission for those purposes. In Securities Act of 1933 Release No. 5386, the Commission modified its corporate disclosure regulations to require each reporting corporation to detail in its Commission filings (1) the material effect which compliance with environmental laws and regulations may have upon the corporation's financial condition, and (2) material litigation which involves the corporation and relates to environmental protection.

Plaintiffs want broader disclosure rules. They seek in this action to require the Commission to modify its corporate disclosure regulations so that each reporting corporation must provide to the SEC for public disclosure information concerning (1) the effect of its corporate activities on the environment, and (2) statistics about its equal employment practices. Plaintiffs claim that such regulations are in the "public interest" in light of the National Environmental Policy Act and Title VII of the Civil Rights Act of 1964. The Commission intended that Release No. 5386 would place it in full compliance with the broad mandate of the National Envi-

ronmental Protection Act; those rules did not touch upon the equal employment disclosures which Plaintiffs request.

The importance of Plaintiffs' claims is underscored by a large number of "ethical investors" in this country—individuals and institutions such as our great universities and foundations which have large funds to invest and need the information that Plaintiffs seek in order to make investment and voting decisions in accordance with their high principles and societal interests.[1]

The Court concludes that the Commission failed to comply with the procedural requirements of the Administrative Procedure Act in formulating and promulgating its new regulations in Release No. 5386, and in denying the equal employment portion of Plaintiffs' Rulemaking Petition. Accordingly, the Court will this date enter an order remanding[2] the matter to the Commission and directing it to undertake further rulemaking action to bring the Commission's corporate disclosure regulations into full compliance with the letter and spirit of NEPA. Then, the Court will review that action according to the provisions of the Administrative Procedure Act, 5 U.S.C. § 551 et seq. (hereinafter, "APA"). The Court's Order also directs the Commission to provide a statement of reasons for the denial of the equal employment portion of Plaintiffs' Rulemaking Petition.

## II. *The Factual Background of this Litigation*

Plaintiffs in this action are Natural Resources Defense Council, Inc., (here-inafter, "NRDC"), Project on Corporate Responsibility, Inc., ("Project"), and Center on Corporate Responsibility, Inc., ("Center"). NRDC is a non-profit membership corporation organized under New York state law and is comprised of lawyers, scientists, and other private citizens who use and enjoy our natural resources and who seek to protect these resources from encroachment and destruction. The Center and Project are corporations which for tax reasons became heir to all activities of the former Project on Corporate Responsibility. The former Project engaged in public interest proxy contests, research, litigation, agency proceedings, and educational activities, in furtherance of corporate responsibility. Defendant, Securities Exchange Commission (hereinafter, "SEC"), is the federal agency charged with administration of the federal securities laws.

When the National Environmental Policy Act, 42 U.S.C. § 4321 et seq. (hereinafter, "NEPA"), became effective on 1 January 1970, the SEC's corporate disclosure regulations and forms did not require (and still do not require) corporations to disclose the environmental impact of their activities and policies. Executive Order No. 11514, 3 C.F.R. 902 (1966–70 Compilation), required all federal agencies to "initiate measures needed to direct their policies, plans and programs so as to meet national environmental goals", and directed the agencies to "develop programs and measures to protect and enhance environmental quality." The Executive Order further directed all agencies to carry out the review required by NEPA § 103[3] and to submit a report on their re-

---

1. J. Simon, C. Powers, & J. Gunnemann, *The Ethical Investor: Universities and Corporate Responsibility* (1972).

2. This remand is appropriate at this stage of litigation since none of the four genuine issues of fact, which the SEC claims remain in this suit, are material to the issue of procedural compliance with the Administrative Procedure Act.

3. NEPA § 103, 42 U.S.C. § 4333, provides:

"All agencies of the Federal Government shall review their present statutory authority, administrative regulations, and current policies and procedures for the purpose of determining whether there are any deficiencies or inconsistencies therein which prohibit full compliance with the purposes and provisions of this Act and shall propose to the President not later than July 1, 1971, such measures as may be necessary to bring their authority and

view and corrective action to the Council on Environmental Quality (hereinafter, "CEQ") not later than 1 September 1970. Executive Order No. 11514 §§ 1, 2(a), 2(d). The 1 September 1970 deadline for submission of the report to the CEQ passed without any action by the SEC to modify its regulations in response to NEPA, or to report to the CEQ about the required review of its regulations.[4]

For over three years Plaintiffs have worked to effect changes in corporate disclosure required by the SEC. On 1 June 1971 Plaintiffs filed a Rulemaking Petition with the SEC. The purpose of the Petition was to request that the Commission implement its new environmental mandate under NEPA in the corporate disclosure area. The Petition requested the Commission to correct a situation in which Plaintiffs claimed "investors now have no available and reliable means of assessing the environmental impact of the particular corporation." As a result, they claimed, "it is difficult and perhaps impossible for investors to make either socially responsible or financially sound investment decisions." *See* Exhibit B to the original complaint at page 3a.

The Petition made specific proposals for new disclosure regulations. It proposed that companies which file with the SEC be required to describe with respect to each major activity or product, *inter alia*: (1) the nature and extent (quantified to the extent feasible) of the resulting pollution or injury to natural areas and resources, and (2) the feasibility of, and plans for, correcting the same. The Petition also requested that the SEC require disclosure of whether the registered company has changed company products, projects, production methods, policies, investments or advertising to advance environmental values.

In the equal employment opportunity area, the Petition requested that each company which makes public claims about its employment of minorities or women be required to include in its SEC filings statistical data by which the facts on this subject of major significance could be tested by interested persons. This employment information would be no more than that information required to be filed by such companies with the Equal Opportunity Commission under existing laws and regulations. The Petition further requested that the SEC modify the definition of "material litigation", for which disclosure is required in SEC forms, so as to include all proceedings against a company under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., or under the equal employment regulations covering federal contractors. In that event, the company would be further required to disclose the statistical data detailed above.

On 21 December 1971 the SEC entered an order which stated that the Commission had "declined to take the action requested" in the Rulemaking Petition. The letter to Plaintiffs which informed them of the order also stated that the Commission "will actively consider amendments to [its disclosure] forms in the near future."

On 16 February 1972 in Securities Act Release No. 5235,[5] the Commission published for public consideration and comment proposed amendments to its regulations. These proposed amendments would require new disclosure in Forms S–1, S–7 and S–9 under the 1933 Act and in Forms 10, 10–K, 8–K under the 1934 Act. In sum, the amendments would require disclosure of the effects on reporting corporations of their compliance with environmental laws and regulations. As a result of this propos-

---

policies into conformity with the intent, purposes, and procedures set forth in this Act."

4. The SEC has now reported to the CEQ. See Exhibit A in the SEC's Memorandum in

Opposition to Plaintiffs' Motion for Summary Judgment (filed 1 April 1974).

5. See Appendix B to this Opinion.

al-and-comment procedure, the Commission adopted amendments to its disclosure regulations. These amendments were published in Securities Release No. 5386 [6] on 20 April 1973. They in no way enlarged, and in some respects retreated from, those changes which the SEC had proposed in Release No. 5235. The Commission's answer to the original complaint in this case made it clear that the Commission views its new rules as fully meeting its obligations under NEPA.[7] The equal employment portion of the Petition was apparently totally denied, since the SEC amendments to its disclosure rules did not deal with equal employment opportunity disclosure.

### III. *The Statutory Background of this Action*

The federal securities acts require registration of securities with the SEC: the registration statements and periodic reports filed in the SEC by corporations provide to the public, material information so that the public can make informed investment decisions. The Securities Act of 1933 itself requires certain information to be included in the registration statements; further, the Act empowers the SEC to require inclusion of "such other information . . . as the Commission may by rules or regulations require as being *necessary or appropriate in the public interest or for the protection of investors*". 15 U.S.C. § 77g. Such information may also be required in the prospectus of a specific securities offering. 15 U.S.C. § 77j; *see also,* 15 U.S.C. § 78o(d).

■ These statutes grant the SEC broad rulemaking authority. The language of the acts suggests that the SEC is empowered to exercise its informed discretion about which information will be required to be disclosed in the various corporate filings. *See, e. g.,* 15 U.

S.C. § 77g. The Supreme Court has decided, and the SEC agrees, that material information which should be required in SEC filings is that information which a reasonable investor might have considered important in making an investment decision. *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–154, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *cf. Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 384, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).

■ Superimposed upon this grant to the SEC of broad rulemaking authority is the Congressional mandate to the federal agencies which is contained in NEPA;[8] that is, NEPA gives specific content to the SEC's authority under the securities laws to require disclosure of information "in the public interest". As analyzed in Calvert Cliffs' Coordinating Comm. v. AEC, 146 U.S.App.D.C. 33, 449 F.2d 1109 (1971), the procedural requirements of NEPA § 102, 42 U.S.C. § 4332, must be carried out "to the fullest extent possible". These procedural requirements are, inter alia: (1) that "policies, regulations, and public laws of the United States shall be interpreted and administered" in accordance with NEPA policies; and (2) that "all agencies of the Federal Government shall— . . . (F) Make available to States, counties, municipalities, institutions, and individuals, advice and information useful in restoring, maintaining, and enhancing the quality of the environment." Thus, Congress has directed the SEC and this Court to interpret the securities laws *to the fullest extent possible* in accordance with the overriding Congressional mandate of NEPA to protect and enhance the Nation's environment. Specifically, *Congress* has determined that the dissemination of information to governmental units, institutions, and interested individuals, can aid the purposes of NEPA.

---

6. See Appendix C to this Opinion.

7. See the original complaint ¶ 29, and Defendants' answer ¶ 15; Defendants' Statement of Material Facts as to Which Defend-

ants Contend There is a Genuine Issue, ¶¶ 2–3 (Filed May 7, 1973).

8. See Appendix A to this Opinion for the applicable portions of NEPA.

696

## IV. *Jurisdiction and Standing of the Parties*

 At least two statutes confer jurisdiction on this Court. 28 U.S.C. § 1337 grants jurisdiction to the Court since this action arises in part under the federal securities acts. Plaintiffs rely on the Securities Act of 1933, 15 U.S.C. §§ 77a, et seq., and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a, et seq., as well as the National Environmental Policy Act, 42 U.S.C. §§ 4331, et seq., for the substance of their claims. The federal securities laws are exercises of Congressional power to regulate commerce among the states. See Oklahoma-Texas Trust v. SEC, 100 F.2d 888 (10th Cir. 1939); Smolowe v. Delendo Corp., 136 F.2d 231 (2d Cir. 1943). Finally, 28 U.S.C. § 1337 does not require a jurisdictional amount. Weiss v. Los Angeles Broadcasting Co., 163 F.2d 313 (9th Cir.), cert. denied, 333 U.S. 876, 68 S.Ct. 895, 92 L.Ed. 1152 (1947).

Jurisdiction is also well-founded under Section 10 of the APA, 5 U.S.C. §§ 701–706. 5 U.S.C. § 702 provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 704 provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." In a number of decisions, this Court and the United States Court of Appeals for the District of Columbia have recognized Section 10 of the APA as an independent source of jurisdiction that empowers district courts to review much agency action regardless of the amount in controversy. Int'l Eng'r Co. v. Richardson, 361 F.Supp. 818 (D.D.C.1973); Pickus v. United States Board of Parole, 507 F.2d 1107 (D.C.Cir. Oct. 11, 1974); Independent Broker-Dealers Trade Ass'n v. SEC, 142 U.S. App.D.C. 384, 442 F.2d 132, cert. denied, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed. 2d 57 (1971); Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970).

 The Court finds that the SEC rulemaking in Release No. 5386 is final agency action for which there is no other adequate remedy in a court for review. Review of agency rulemaking may be effected either (1) directly, as in the case at bar, or (2) indirectly by way of defense in an enforcement action. First, prior to the suit at bar, Plaintiffs filed a Petition for Review in the United States Court of Appeals for the District of Columbia to seek direct review of the rules in Release No. 5386. On 17 June 1974 the Court of Appeals dismissed that suit for lack of jurisdiction, citing PBW Stock Exchange, Inc., v. SEC, 485 F.2d 718 (3rd Cir. 1973), cert. denied, 416 U.S. 969, 94 S.Ct. 1992, 40 L.Ed.2d 558 (1974). The *PBW Stock Exchange* case held that SEC rulemaking is not reviewable by direct petition to the court of appeals under the Securities Exchange Act's provision for review of SEC "orders". *See* 15 U.S.C. 78y(a).

Secondly, it cannot be expected that the adequacy of these rules will be challenged in any enforcement action in any court. Certainly no investor such as Plaintiffs herein will have an opportunity to challenge these regulations in an enforcement suit, simply because the rules are not operative on investors. Nor is it likely that in an enforcement proceeding brought against a reporting corporation would such corporation challenge the regulations on the theory that they have *not gone far enough* in implementing NEPA. A reporting corporation would attack the rules on the theory that they were *outside* the SEC authority. There appears to be little question that these regulations in Release No. 5386 are within SEC rulemaking authority as provided by the federal securities laws. Plaintiffs' challenge is different: they contend that the SEC should impose *more burdensome* reporting requirements for the benefit of investors and the general public. This type of

challenge will not be raised in any enforcement action.

■ The Court further concludes that review is not clearly and convincingly precluded by statute. The federal securities laws themselves contain no provision for judicial review of SEC rulemaking; and, no other federal statute clearly and convincingly precludes judicial review.

The APA does not preclude review in this case. Since the federal securities acts themselves do not prescribe the procedure for judicial review of SEC rulemaking, the APA provisions are applicable. Those procedures apply "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). The Court has already eliminated the first exception.

■ Disposition of another earlier suit filed by these Plaintiffs in the United States Court of Appeals for the District of Columbia suggests that SEC rulemaking is not committed to agency discretion and thus is not beyond review by this court. Natural Resources Defense Council, Inc., v. SEC, No. 72–1148 (D.C.Cir. Feb. 8, 1973). Plaintiffs brought suit for review of the SEC's disposition on 22 December 1971 of Plaintiffs' Rulemaking Petition on the theory that the Court of Appeals had jurisdiction to review that agency action under statutory provision for court of appeals review of an "order" of the Commission. 15 U.S.C. §§ 77i(a), 78y(a). On 8 February 1972 the Court of Appeals dismissed the petition for review, holding that the Commission's failure to grant Plaintiffs' Rulemaking Petition was not a "final order" subject to direct appellate review under the securities laws. Regarding district court review, the Court of Appeals said: "[w]hether the Commission has improperly delayed its action under NEPA or has improperly interpreted that Act are issues which may be resolved in the United States District Court for the District of Columbia where petitioner

may proceed by appropriate action under the APA or by way of an action for declaratory judgment." We therefore conclude that SEC rulemaking is not solely committed to agency discretion under the facts and circumstances of this case.

■ All Plaintiffs have standing to sue. The test for standing stated in Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), and United States v. S. C. R. A. P., 412 U.S. 669, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973), is whether (1) the challenged agency action has caused plaintiffs "injury in fact", and (2) the alleged injury is to an interest "arguably within the zone of interests" protected or regulated by the statute. NRDC and some of its members have funds which they want to invest prudently and with a minimum adverse impact upon the environment; some members own common stock which they want to vote prudently and with a minimum adverse impact on the environment. The Court agrees with NRDC and its members that their interest in protecting the environment, in investing their funds, and in voting their shares in a socially responsible manner, have been and continue to be adversely affected and aggrieved by the SEC's failure to adopt corporate disclosure regulations which will require disclosure of a corporation's impact on the environment and statistics about its equal employment practices. NRDC further contends that the interests of its members in using and enjoying natural resources have been and continue to be adversely affected and aggrieved by corporate activity which continues in part because of the failure of the SEC to require the disclosures described above. Similarly, Project's standing stems from its ownership of a small portfolio of securities it desires to manage in a way consistent with the Project's objective of promoting socially responsible corporate behavior. For this reason it needs the information which Plaintiffs seek.

The Center, on the other hand, has another interest which has been injured by the SEC's rulemaking action. The Cen-

ter participates in research, litigation, educational activities, and agency proceedings, in furtherance of corporate responsibility. The organization's broad public education purposes require information. This need for information has been expressly sanctioned by the United States Court of Appeals for the District of Columbia as an adequate basis for standing. *See* Scientists' Institute for Public Information v. AEC, 156 U.S. App.D.C. 395, 481 F.2d 1079 at note 29 (1973).

These injuries to Plaintiffs are wholly adequate to meet the injury-in-fact requirement for standing. The Supreme Court stated in United States v. S. C. R. A. P., 412 U.S. 669, 93 S.Ct. 2405, 37 L. Ed.2d 254 (1973):

> "In interpreting 'injury in fact' we made it clear that standing was not confined to those who could show 'economic harm' . . . . Nor, we said, could the fact that many persons shared the same injury be sufficient reason to disqualify from seeking review of an agency's action any person who had in fact suffered injury."

The Court finds that Plaintiffs have been deprived information necessary for their organizational purposes because of the SEC failure to adopt regulations requiring broader disclosure in the environmental and equal employment opportunity areas. This injury, though in part non-economic, is sufficient injury to support Plaintiffs' standing to sue.

█ Further, plaintiffs' interests are within the zone of interests protected by the federal securities acts and NEPA. First, the principal purposes of the federal securities laws is full disclosure of material information; this purpose reflects the Brandeis philosophy that "sunlight is said to be the best of disinfectants." *See* SEC v. Capital Gains Research Bureau, 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963). Plaintiffs would use the corporate disclosures they seek not only in their role as public educators, but also as investors and voting shareholders making informed, socially responsible investment decisions. Secondly, Congress declared in NEPA (1) that one of the purposes of NEPA is "to promote efforts which will prevent or eliminate damage to the environment," and (2) that "each person has a responsibility to contribute to the preservation and enhancement of the environment," and (3) that "all agencies of the Federal Government shall—. . . Make available to States, . . . institutions, and individuals, advice and information useful in restoring, maintaining, and enhancing the quality of the environment." Plaintiffs seek through public education, investment of funds, and voting of shareholdings, to do their part to encourage corporate responsibility in environmental matters. This Court can conceive of no other individuals or institutions who could have a greater interest which NEPA protects than Plaintiffs.

V. *The SEC failed to comply with the procedural requirements of the Administrative Procedure Act in adopting regulations which are published in Release No. 5386, and in denying the equal employment portion of the Plaintiff's Rulemaking Petition.*

█ The administration of the securities law lies in the first instance with the SEC. It is the Commission which must first decide (subject, of course, to the statutory requirements) what information corporations shall provide for the public files of the SEC. Moreover, this interpretation of the securities acts is accorded great weight.

█ But once the SEC makes rules or regulations for this disclosure, the courts may review that agency action under conditions and standards provided by the APA. *See supra* at page 697. Indeed, this Court can set aside SEC rules which do not meet the NEPA mandate, if the Court finds that the SEC rulemaking is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Reviewing courts have authority and responsibility to scrutinize

agency decisions closely in order to ensure that they proceed from a proper understanding of the relevant laws and in order to correct those decisions which are inconsistent with Congressional mandates, fall short of the statutory policies, or strike an improper balance among conflicting interests. As the Supreme Court stated in NLRB v. Brown, 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965):

> "Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions. Of course due deference is to be rendered to agency determinations of fact, so long as there is substantial evidence to be found in the record as a whole. But where, as here, the review is not a question of fact, but of judgment as to the proper balance to be struck between conflicting interests, '[t]he deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress.' American Ship Building Co. v. National Labor Relations Board, 380 U.S. 300 at 318, [85 S.Ct. 955, 13 L.Ed.2d 855] . . . "

380 U.S. at 291–292, 85 S.Ct. at 988.

This Court is prepared to fulfill its review function. We are ready to review the Commission's apparent decision that even in light of NEPA no reasonable investor in this country wants the type of information which Plaintiffs seek. But now, the Court must first determine whether the SEC rulemaking action which resulted in Release No. 5386 is the result of an informed decision-making process as provided in the APA. Obviously, it was not!

The Court concludes that the SEC has not entered into an informed and reasoned consideration of the changes which it should effect in its disclosure rules and regulations as a result of NEPA's passage. The SEC inadequately notified in Release No. 5235 interested parties that it was considering additional disclosure rules which would *fully satisfy the mandate of Congress* expressed in NEPA. In addition, the Commission failed to provide an adequate statement of the basis and purpose of the rulemaking action which it published in SEC Release No. 5386. Without such a statement of basis and purpose, this Court is at a loss to judge whether the Commission rationally exercised its rulemaking authority according to the federal securities laws and NEPA. Accordingly, by order of even date, the Court remands this matter to the SEC for further rulemaking action not inconsistent with this opinion. Because of the Court's opinion that the rules which were promulgated in Release No. 5386 are within the SEC's statutory authority, we will order that those rules remain in effect pending further SEC rulemaking action.

The procedural requirements for the SEC rulemaking process are prescribed by the APA, 5 U.S.C. § 553. Prior in making new disclosure rules, the SEC must publish a general notice of the proposed rules with "reference to the legal authority under which the rule is proposed; and either the terms or substance of the proposed rule or a description of the subjects and issues involved." 5 U.S.C. §§ 553(b)(2)–(3).

The purpose of the notice is to "give interested persons an opportunity to participate in the rule making through submission of written data, views or arguments." 5 U.S.C. § 553(c). The intent is "to give the *public an opportunity to participate* in the rulemaking process. It also enables the agency promulgating the rule to *educate itself* before establishing rules and procedures which have a substantial impact on those regulated." Texaco, Inc. v. FPC, 412 F.2d

740, 744 (3rd Cir. 1969) (emphasis added).

■ Where, as here, the rules adopted by the agency will have a broad impact not merely on those regulated companies, but also on the general public in a matter which vitally concerns the public and transcends economic issues, then the notice requirement must be interpreted liberally. In environmental protection, the courts have been most vigilant in exercising supervision over administrative action. As Chief Judge Bazelon stated in Environmental Defense Fund v. Ruckelshaus, 142 U.S. App.D.C. 74, 439 F.2d 584 (1971):

> "We stand on the threshold of a new era in the history of the long and fruitful collaboration of administrative agencies and reviewing courts.
>
> ". . . [C]ourts are increasingly asked to review administrative action that touches on *fundamental personal interests in life, health, and liberty.* These interests have always had a *special claim to judicial protection,* in comparison with the economic interests at stake in a ratemaking or licensing proceeding."

439 F.2d at 597–98 (emphasis added).

Under the special and unusual circumstances of this case, the notice of rulemaking which the SEC published in Release No. 5235 is clearly inadequate. Normally when the courts review rulemaking action, the question is whether the rules fall *within* the authority of the agency; any challenge is brought by a regulated party and is based upon a claim that the rule is *outside* agency authority. Such is not the case here. Plaintiffs contend that the SEC has not *gone far enough* in requiring corporate disclosure to satisfy NEPA. But, the only reference to NEPA in Release No. 5235 is that "[t]his action is being taken pursuant to the National Environmental Policy Act." The SEC now belatedly contends that these new disclosure rules fully meet the mandate of NEPA. Yet the Commission failed to inform the public that such was the purpose of these proposed rules. If the SEC undertook consideration of rules which are in the public interest and effectuate NEPA *to the fullest extent possible,* its notice of proposed rulemaking should have informed the public of the broad implication of what it was about to do.

■ Certainly the notice should have been calculated to elicit comment from legal scholars, public interest groups, foundations, colleges, universities, and other institutions and individuals who participate in the nation's capital markets and who may want to comment about what the SEC legally could and should do to fulfill NEPA. There are many so-called "ethical investors" in this country who want to invest their assets in firms which are concerned about and acting on environmental problems of the nation. This attitude may be based purely upon a concern for the environment; but it may also proceed from the recognition that awareness of and sensitivity to environmental problems is the mark of intelligent management. Whatever their motive, this Court is not prepared to say that they are not rational investors and that the information they seek is not material information within the meaning of the securities laws. Moreover, this Court is not prepared to say that a corporation's adverse impact on the environment or its equal employment practices may not directly lead to an unfortunate financial condition in the near future. There is substantial risk that failure to adjust corporate behavior to federal standards will result in severe monetary sanctions.

But the SEC should make that determination first and it should make it on the basis of broad public participation. The notice in this case was not so calculated: Release No. 5235 on its face, as well as an analysis of the comments received following this notice support this conclusion.[9]

---

9. Only a small percentage of the approximately 85 responses considered what further steps the SEC could take to fulfill the NEPA mandate. Most responses were confined to

■ The APA also provides that once the rulemaking process is complete, "the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose." 5 U.S.C. § 553(c). The purpose of this provision is to provide for judicial review an enunciation of the basis and rationale of the agency's action. *See* American Smelting & Refining Co. v. FPC, 494 F.2d 925 (D.C.Cir. 1974). In the case of informal rulemaking, this requirement is not to become a "procedural strait jacket"; and yet, the United States Court of Appeals for the District of Columbia has recognized that in certain contexts the minimum requirements of the APA may not be sufficient for adequate judicial review. Kennecott Copper Corp. v. EPA, 149 U.S.App.D.C. 231, 462 F.2d 846, 850 (1972). The simple statement in Release No. 5386 that "having considered the public comments on Securities Act Release No. 5235 (February 16, 1972) it is the Commission's opinion that the amendments will promote investor protection and at the same time promote the purposes of NEPA," does not even meet the minimum requirements of the APA. There is no illumination of rationale, merely bold conclusion.

In the words of our Court of Appeals, "the 'concise general statement of . . . basis and purpose' mandated by [5 U.S.C. 553(c)] will enable us to see what major issues of policy were ventilated by the informal proceedings and why the agency reacted to them as it did." Automotive Parts & Accessories Ass'n v. Boyd, 132 U.S.App.D.C. 200, 407 F.2d 330, 338 (1968). The "general statement" is necessary in order that the reviewing court can determine whether the agency's decision was

"based on a consideration of the relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 146 (1971).

■ The Court concludes that the SEC must provide a more complete "general statement" so that the Court may determine, *inter alia* (but not limited to): (1) the SEC's concept of the extent of its statutory obligation to the public under the securities acts and NEPA, (2) the alternatives which are considered, and (3) the reasons for excluding substantial alternatives which may be proposed by interested parties. This "general statement" must not be in conclusory terms, but must be in sufficient detail to permit review. We impose this requirement of the more extensive "general statement" in the spirit that the agency and the court "together constitute a 'partnership' in furtherance of the public interest, and are 'collaborative instrumentalities of justice'." Kennecott Copper Corp. v. EPA, *supra, citing* Greater Boston Television Corp. v. FCC, 143 U.S.App.D.C. 383, 444 F.2d 841, 851–852, cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971).

■ When the SEC reconsiders its rules in accordance with this opinion, it should develop a record and resolve two overriding factual issues. The first is the extent of "ethical investor" interest in the type of information which Plaintiffs have requested. The second issue is what avenues of action are available which ethical investors may pursue and which will tend to eliminate corporate practices that are inimical to the environment and equal employment opportunity.[10] While these are important inquiries and may require a legisla-

the rules proposed in Release No. 5235. One response from a scholar in securities regulation, Professor Louis Loss, particularly impressed the Court. He associated himself generally with the 14 March 1972 comments which were submitted to the SEC by NRDC and advocated broader disclosure rules.

10. With respect to this issue, the Commission has taken the position that even if Plaintiffs and those similarly situated had the information, corporate activity in the two areas of concern would be unaffected. See Defendants' Supplemental Memorandum Concerning Genuine Disputes of Material Fact, filed May 16, 1974. This position, of

tive-type hearing in order to resolve, the SEC should not limit itself to these questions. Rather, it must imaginatively exercise its authority and expertise.

 With respect to the SEC denial of the equal employment opportunity portion of Plaintiffs' Rulemaking Petition, the SEC failed to comply with the APA, 5 U.S.C. § 555(e). 5 U.S.C. § 555(e) provides that the agency, when disposing of a written petition, shall: "[e]xcept in affirming a prior denial or when the denial is self-explanatory, . . . [give] a brief statement of the grounds for denial." This statement is, again, for judicial review. No statement whatsoever has been formulated by the SEC, and this Court finds that the reasons for denial on this complex question are not self-explanatory. In view of (1) the time which has elapsed since the Commission considered the Petition, and (2) the change which has occurred in the Commission's membership, it is appropriate that the Commission fully reconsider the equal employment portion in order to avoid a *post hoc* rationalization for its disposition. The Court further urges the Commission to consider the views expressed in the excellent Memorandum filed by the American Civil Liberties Union as Amicus Curiae in this matter, as well as the applicable portions of this opinion, in reaching its conclusion.

The substance of the ACLU's argument for disclosure of equal employment opportunity information in SEC filings is that the information is required for ethical investors "in the public interest." First, the publication of employment statistics deters corporations from making unfounded employment practice

claims to shareholders. Second, failure to comply with Title VII and executive orders promulgated thereunder constitute a massive threat to a corporation's business. Individual suits, government suits, as well as blacklisting of an offender from government contracts, are serious economic risks attending noncompliance. For these and other reasons the SEC must seriously consider the non-onerous disclosure which Plaintiffs seek. The Court is impressed with the persuasive argument of the ACLU.

### VI. *Conclusion*

The SEC failed to comply with the procedural requirements of the APA in adopting rules which fulfill NEPA, and in denying the equal employment opportunity portion of Plaintiffs' Rulemaking Petition. These procedural requirements are, of course, the first steps which the agency must take in order to insure that its decisions are well-considered and in accordance with its statutory authority and the public interest. There appears to be merit in Plaintiffs' disclosure suggestions which the Commission should carefully consider along with other proposals by interested parties. Moreover, the SEC must keep in mind the mandate of Congress in the environmental protection and equal employment opportunity areas.

### APPENDIX "A"

*The National Environment Policy Act of 1969* *

An Act to establish a national policy for the environment, to provide for the establishment of a Council on Environmental Quality, and for other purposes.

---

course, appears to fly in the face of the premise upon which both Congress, in enacting the securities acts and NEPA, and the SEC, in administering the securities acts from day to day, operate: "that appropriate publicity tends to deter questionable practices and to elevate standards of business conduct." SEC, Disclosure to Investors, A Reappraisal of Administrative Policy Under the 1933 and 1934 acts (1969).

* 42 U.S.C. § 4321 et seq., 83 Stat. 852, Pub.L. 91–190. The United States Code sections correspond to the section numbers of the Public Law in the following manner:
Section 2 is 42 U.S.C. § 4321
Section 101 is 42 U.S.C. § 4331
Section 102 is 42 U.S.C. § 4332
Section 103 is 42 U.S.C. § 4333
Section 104 is 42 U.S.C. § 4334
Section 105 is 42 U.S.C. § 4335

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled.* That this Act may be cited as the "National Environmental Policy Act of 1969."

PURPOSE

Sec. 2. The purposes of this Act are: To declare a national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; to enrich the understanding of the ecological systems and natural resources important to the Nation; and to establish a Council on Environmental Quality.

TITLE I

*Declaration of National Environmental Policy*

Sec. 101. (a) The Congress, recognizing the profound impact of man's activity on the interrelations of all components of the natural environment, particularly the profound influences of population growth, high-density urbanization, industrial expansion, resource exploitation, and new and expanding technological advances and recognizing further the critical importance of restoring and maintaining environmental quality to the overall welfare and development of man, declares that it is the continuing policy of the Federal Government, in cooperation with State and local governments, and other concerned public and private organizations, to use all practicable means and measures, including financial and technical assistance, in a manner calculated to foster and promote the general welfare, to create and maintain conditions under which man and nature can exist in productive harmony, and fulfill the social, economic, and other requirements of present and future generations of Americans.

(b) In order to carry out the policy set forth in this Act, it is the continuing responsibility of the Federal Government to use all practicable means, consistent with other essential considerations of national policy, to improve and coordinate Federal plans, functions, programs, and resources to the end that the Nation may—

(1) Fulfill the responsibilities of each generation as trustee of the environment for succeeding generations;

(2) Assure for all Americans safe, healthful, productive, and esthetically and culturally pleasing surroundings;

(3) Attain the widest range of beneficial uses of the environment without degradation, risk to health or safety, or other undesirable and unintended consequences;

(4) Preserve important historic, cultural, and natural aspects of our national heritage, and maintain, wherever possible, an environment which supports diversity, and variety of individual choice;

(5) Achieve a balance between population and resource use which will permit high standards of living and a wide sharing of life's amenities; and

(6) Enhance the quality of renewable resources and approach the maximum attainable recycling of depletable resources.

(c) The Congress recognizes that each person should enjoy a healthful environment and that each person has a responsibility to contribute to the preservation and enhancement of the environment.

Sec. 102. The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this Act, and (2) all agencies of the Federal Government shall—

(A) Utilize a systematic, interdisciplinary approach which will insure the integrated use of the natural and social sciences and the environmental design arts in planning and in decisionmaking which may have an impact on man's environment;

(B) Identify and develop methods and procedures, in consultation with the Council on Environmental Quality established by title II of this Act, which will insure that presently unquantified environmental amenities and values may be given appropriate consideration in decisionmaking along with economic and technical considerations;

(C) Include in every recommendation or report on proposals for legislation. and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on—

(i) The environmental impact of the proposed action,

(ii) Any adverse environmental effects which cannot be avoided should the proposal be implemented,

(iii) Alternatives to the proposed action,

(iv) The relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

(v) Any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

Prior to making any detailed statement, the responsible Federal Official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State, and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of title 5, United States Code, and shall accompany the proposal through the existing agency review processes;

(D) Study, develop, and describe appropriate alternatives to recommended courses of action in any proposal which involves unresolved conflicts concerning alternative uses of available resources;

(E) Recognize the worldwide and long-range character of environmental problems and, where consistent with the foreign policy of the United States, lend appropriate support to initiatives, resolutions, and programs designed to maximize international cooperation in anticipating and preventing a decline in the quality of mankind's world environment;

(F) Make available to States, counties, municipalities, institutions, and individuals, advice and information useful in restoring, maintaining, and enhancing the quality of the environment;

(G) Initiate and utilize ecological information in the planning and development of resource-oriented projects; and

(H) Assist the Council on Environmental Quality established by title II of this Act.

Sec. 103. All agencies of the Federal Government shall review their present statutory authority, administrative regulations, and current policies and procedures for the purpose of determining whether there are any deficiencies or inconsistencies therein which prohibit full compliance with the purposes and provisions of this Act and shall propose to the President not later than July 1, 1971, such measures as may be necessary to bring their authority and policies into conformity with the intent, purposes, and procedures set forth in this Act.

Sec. 104. Nothing in section 102 or 103 shall in any way affect the specific statutory obligations of any Federal agency (1) to comply with criteria or standards of environmental quality, (2) to coordinate or consult with any other Federal or State agency, or (3) to act, or refrain from acting contingent upon the recommendations or certification of any other Federal or State Agency.

Sec. 105. The policies and goals set forth in this Act are supplementary to those set forth in existing authorizations of Federal agencies.

APPENDIX "B"

FOR RELEASE WEDNESDAY, FEBRUARY 16, 1972

SECURITIES ACT OF 1933

Release No. 5235

SECURITIES EXCHANGE ACT OF 1934

Release No. 9498

NOTICE OF PROPOSED AMENDMENTS TO REGISTRATION AND REPORT FORMS TO REQUIRE DISCLOSURE WITH RESPECT TO COMPLIANCE WITH ENVIRONMENTAL REQUIREMENTS

Notice is hereby given that the Securities and Exchange Commission has under consideration proposed amendments to certain of its registration and report forms to require disclosure of the effect on the issuer's business of compliance with Federal, State and local laws and regulations relating to the protection of the environment. The forms which would be amended are Forms S-1, S-7 and S-9 under the Securities Act of 1933 and Forms 10, 10-K and 8-K under the Securities Exchange Act of 1934. This action is being taken pursuant to the National Environmental Policy Act.

More specifically, the proposed amendments would require as a part of the description of an issuer's business appropriate disclosure with respect to the material effects which compliance with environmental laws and regulations may have upon the capital expenditures, earnings and competitive position of the issuer and its subsidiaries. In addition, information would be required as to pending governmental or private legal or administrative enforcement proceedings arising under environmental laws or regulations and any such proceedings known to be contemplated by governmental authorities.

The above proposals emphasize the effect of environmental statutes and regulations, and enforcement proceedings thereunder, which may be felt in the future by the issuer and specify certain information to be furnished in connection with the description of the business. This item requires information with respect to the business done and intended to be done and the development of the business during the past five years. The amendments would serve to specify more precisely the disclosure referred to in Securities Act Release 5170 in regard to environmental matters and would, as to the forms proposed to be amended, supersede that release.

Item 12 of Form S-1 now requires information as to legal proceedings known to be contemplated by governmental authorities. The proposed amendments would include a similar requirement in Item 10 of Form 10 and Item 5 of Form 10-K. The requirement would be applicable to proceedings relating to environmental matters as well as to other types of proceedings.

Instruction 2 to the above-mentioned items provides that information need not be given as to any proceeding which involves primarily a claim for damages if the amount involved does not exceed 15 percent of the current assets on a consolidated basis. It is proposed to reduce this percentage to 10 percent. The Commission believes that this is a more realistic test of significance. Moreover, it will make the requirement consistent with the items calling for a description of business where information is required with respect to separate lines of business amounting to 10 percent or more of the total, except in the case of smaller companies.

The text of the proposed amendments follows:

FORM S-1

I. Item 9(a) of Form S-1 would be amended by adding thereto a new Instruction 5 reading as follows:

5. *Appropriate disclosure shall also be made as to the material effects that compliance with Federal, State and local provisions regulating the*

discharge of materials into the environment, or otherwise relating to the protection of the environment, may have upon the capital expenditures, earnings and competitive position of the registrant and its subsidiaries.

II. Item 12 of Form S–1 would be amended as follows:

*Item 12. Legal Proceedings.*

Briefly describe any material pending legal proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject. Include the name of the court or agency in which the proceedings are pending, the date instituted, and the principal parties thereto, *a description of the factual basis alleged to underly the proceeding and the relief sought.* Include similar information as to any such proceedings known to be contemplated by governmental authorities.

*Instructions.* 1. (No change)

2. No information need be given with respect to any proceeding which involves primarily a claim for damages if the amount involved, exclusive of interest and costs, does not exceed ~~15~~ *10* percent of the current assets of the registrant and its subsidiaries on a consolidated basis. However, if any proceeding presents in large degree the same issues as other proceedings pending or known to be contemplated, the amount involved in such other proceedings shall be included in computing such percentage.

3. (No change)

4. *Notwithstanding the foregoing, administrative or judicial proceedings arising under any Federal, State or local provisions regulating the discharge of materials into the environment or otherwise specifically relating to the protection of the environment shall not be considered "ordinary routine litigation incidental to the business." Any such proceedings by governmental authorities shall be deemed materi-* al *and shall be described. Any such proceedings by private parties shall be described if material.*

## FORM S–7

III. Item 5(a) of Form S–7 would be amended to read as follows:

(a) Identify the business done and intended to be done by the registrant and its subsidiaries. In the case of an extractive enterprise, give appropriate information as to development, reserves and production. Appropriate disclosure shall be made with respect to (i) any portion of the business which may be subject to renegotiation of profits or termination of contracts or subcontracts at the election of the Government, *and (ii) the material effects that compliance with Federal, State and local provisions regulating the discharge of materials into the environment, or otherwise relating to the protection of the environment, may have upon the capital expenditures, earnings and competitive position of the registrant and its subsidiaries.*

IV. Item 5(e) of Form S–7 would be amended to read as follows:

(e) Briefly describe any pending legal proceedings to which the registrant or any of its subsidiaries is a party which may have a substantial effect upon the earnings or financial condition of the registrant, *and any administrative or judicial proceedings (i) now pending or (ii) known to be contemplated by governmental authorities, arising under any Federal, State or local provisions referred to in (a) above, including the name of the court or agency, the factual basis alleged to underly the proceeding and the relief sought.*

## FORM S–9

V. Item 3 of Form S–9 would be amended by adding thereto the following new paragraph (c):

(c) *Appropriate disclosure shall be made as to the material effects that compliance with Federal, State and local provisions regulating the discharge of*

materials into the environment, or otherwise relating to the protection of the environment, may have upon the capital expenditures, earnings and competitive position of the registrant and its subsidiaries.

## FORM 10

VI. Item 1(b) of Form 10 would be amended by adding thereto a new Instruction 6 reading as follows:

6. *Appropriate disclosure shall also be made as to the material effects that compliance with Federal, State and local provisions regulating the discharge of materials into the environment, or otherwise relating to the protection of the environment, may have upon the capital expenditures, earnings and competitive position of the registrant and its subsidiaries.*

VII. Item 10 of Form 10 would be amended as follows:

*Item 10.* ~~Pending~~ *Legal Proceedings.*

Briefly describe any material pending legal proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject. Include the name of the court or agency in which the proceedings are pending, the date instituted, ~~and~~ the principal parties thereto, *a description of the factual basis alleged to underly the proceeding and the relief sought. Include similar information as to any such proceedings known to be contemplated by governmental authorities.*

*Instructions.* 1. (No change)

2. No information need be given with respect to any proceeding which involves primarily a claim for damages if the amount involved, exclusive of interest and costs, does not exceed ~~15~~ *10* percent of the current assets of the registrant and its subsidiaries on a consolidated basis. However, if any proceedings presents in large degree the same issues as other proceedings pending or known to be contemplated,

the amount involved in such other proceedings shall be included in computing such percentage.

3. (No change)

4. *Notwithstanding the foregoing, administrative or judicial proceedings arising under any Federal, State or local provisions regulating the discharge of materials into the environment or otherwise specifically relating to the protection of the environment shall not be considered "ordinary routine litigation incidental to the business." Any such proceedings by governmental authorities shall be deemed material and shall be described. Any such proceedings by private parties shall be described if material.*

## FORM 10-K

VIII. Item 1(b) of Form 10-K would be amended by adding thereto a new subparagraph (7) reading as follows:

*(7) The material effects that compliance with Federal, State and local provisions regulating the discharge of materials into the environment, or otherwise relating to the protection of the environment, may have upon the capital expenditures, earnings and competitive position of the registrant and its subsidiaries.*

IX. Item 5 of Form 10-K would be amended as follows:

*Item 5.* ~~Pending~~ *Legal Proceedings.*

Briefly describe any material pending legal proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject. Include the name of the court or agency in which the proceedings are pending, the date instituted, ~~and~~ the principal parties thereto, *a description of the factual basis alleged to underly the proceeding and the relief sought. Include similar information as to any such proceedings known to be contemplated by governmental authorities.*

*Instructions.* 1. (No change)

2. No information need be given with respect to any proceeding which involves primarily a claim for damages if the amount involved, exclusive of interest and costs, does not exceed ~~15~~ *10* percent of the current assets of the registrant and its subsidiaries on a consolidated basis. However, if any proceeding presents in large degree the same issues as other proceedings pending or known to be contemplated, the amount involved in such other proceedings shall be included in computing such percentage.

3. (No change)

4. *Notwithstanding the foregoing administrative or judicial proceedings arising under any Federal, State or local provisions regulating the discharge of materials into the environment or otherwise specifically relating to the protection of the environment shall not be considered "ordinary routine litigation incidental to the business." Any such proceedings by governmental authorities shall be deemed material and shall be described. Any such proceedings by private parties shall be described if material.*

### FORM 8–K

X. Item 3 of Form 8–K would be amended as follows:

*Item 3. Legal Proceedings.*

(a) Briefly describe any material legal proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries has become a party or of which any of their property ~~is~~ *has become* the subject. Include the name of the court or agency in which the proceedings are pending, the date instituted, ~~and~~ the principal parties thereto, *a description of the factual basis alleged to underlie the proceedings and the relief sought.*

(b) (No change)

*Instructions.* 1. (No change)

2. No information need be given with respect to any proceeding which involves primarily a claim for damages if the amount involved, exclusive of interest and costs, does not exceed ~~15~~ *10* percent of the current assets of the registrant and its subsidiaries on a consolidated basis. However, if any proceeding presents in large degree the same issues as other proceedings pending or known to be contemplated, the amount involved in such other proceedings shall be included in computing such percentage.

3. (No change)

4. *Notwithstanding the foregoing, administrative or judicial proceedings arising under any Federal, State or local provisions regulating the discharge of materials into the environment or otherwise specifically relating to the protection of the environment shall not be considered "ordinary routine litigation incidental to the business." Any such proceedings by governmental authorities shall be deemed material and shall be described. Any such proceedings by private parties shall be described if material.*

All interested persons are invited to submit their views and comments on the foregoing proposals, in writing, to Charles J. Sheppe, Chief, Branch of Regulations and Legislative Matters, Division of Corporation Finance, Securities and Exchange Commission, Washington, D. C. 20549, on or before March 28, 1972. All such communications will be available for public inspection.

By the Commission.

Ronald F. Hunt
Secretary

### APPENDIX "C"

SECURITIES ACT OF 1933
Rel. No. 5386/April 20, 1973
SECURITIES EXCHANGE ACT OF 1934

Rel.No. 10116/April 20, 1973

NOTICE OF ADOPTION OF AMENDMENTS TO REGISTRATION AND REPORT FORMS TO REQUIRE DISCLOSURE WITH RESPECT TO COM-

PLIANCE WITH ENVIRONMENTAL REQUIREMENTS AND OTHER MATTERS

The Securities and Exchange Commission today adopted amendments to its registration and reporting forms to require more meaningful disclosure of certain items pertaining to business and litigation, and particularly as to the effect upon the issuer's business of compliance with Federal, State and local laws and regulations relating to the protection of the environment. The forms which are amended are Forms S–1, S–7 and S–9 under the Securities Act of 1933 and forms 10, 10–K and 8–K under the Securities Exchange Act of 1934. This action is being taken pursuant to the provisions of these acts and pursuant to the National Environmental Policy Act ("NEPA").

The Commission notes that Section 105 of the NEPA states that the policies and goals set forth therein are supplementary to those in existing authorizations of Federal agencies. Having considered the public comments on Securities Act Release No. 5235 (February 16, 1972) it is the Commission's opinion that the amendments will promote investor protection and at the same time promote the purposes of NEPA.

The amendments adopted herewith will require as a part of the description of an issuer's business, appropriate disclosure with respect to the material effects which compliance with environmental laws and regulations may have upon the capital expenditures, earnings and competitive position of the issuer and its subsidiaries. Other amendments describe the extent to which litigation disclosures should contain specific descriptions of environmental proceedings. These amendments obviate the need for the environmental disclosure guidelines set forth in Part I of Securities Act Release No. 5170 (July 19, 1971), and accordingly these amendments will supersede such guidelines.

I. *Description of Business.*

The description of business items in the forms require information concerning business and intended to be done with respect to the development of business during prior years and in future periods. The amendments emphasize the possible future effect of environmental statutes and regulations, and proceedings thereunder, on the issuer, and they specify the information to be furnished in connection with the description of business. Under the description of business items, the amendments require disclosure of the:

> material effects that compliance with Federal, State and local provisions regulating the discharge of materials into the environment, or otherwise relating to the protection of the environment, may have upon the capital expenditures, earnings and competitive position of the registrant and its subsidiaries.

The Commission is aware that the amendments do not specify any minimum or maximum time period in the future required to be described. However, inasmuch as environmental compliance programs for different industries may involve substantially differing lead times, the Commission feels the time period is best left unspecified. If management has a reasonable basis to believe that future environmental compliance may have a material effect on the issuer's expenditures, earnings or competitive position in the industry, then such matters should be disclosed.

Expenditures solely attributable to compliance with environmental provisions should be disclosed if material. When expenditures are partly for the replacement, modification or addition of equipment or facilities, and partly for the purpose of complying with any environmental provisions, management should estimate the cost of environmental compliance when there is a reasonable basis to segregate such amount. Such disclosures should be based upon all information reasonably known to management and should not be calculated and stated on an annual basis when such would diminish the apparent materiality of the expenditures or result in non-disclosure.

II. *Legal Proceedings.*

The amendments include several revisions relative to disclosure requirements for legal proceedings. It is noted that some of the forms have a separate item for legal proceedings; others contain requirements or instructions under the business caption.

A. Item 12 of Form S–1 now generally requires information as to material legal proceedings "known to be contemplated by governmental authorities." The Commission has adopted amendments the same as those published for comment to include a requirement similar to that in Form S–1 in Item 10 of Form 10 and Item 5 of Form 10–K. The requirement is applicable to proceedings relating to environmental matters as well as to other types of proceedings.

B. The existing requirements in the various forms pertaining to disclosure of litigation generally call only for a "description" of certain proceedings. The Commission has adopted amendments to Forms S–1, 10, 10–K and 8–K, as published for comment, to require a description of the factual basis of the proceedings and the relief sought. The Commission notes that nothing in the amendments alters the present practice permitting in disclosures of legal proceedings, counsel's opinion as to the meritorious character of the claim and as to the validity of alleged defenses or cross-claims.

C. Heretofore, instructions under Item 12 of Form S–1, Item 10 of Form 10, Item 5 of Form 10–K, and Item 3 of Form 8–K have stated that a legal proceeding is not "material" if it involves primarily a claim for damages and if the amount involved does not exceed 15 percent of the issuer's current assets on a consolidated basis. The amendments adopt the proposals published for comment to reduce this standard of economic materiality to 10 percent of current assets, as being a more realistic test of materiality and one which conforms to other similar standards appearing elsewhere in the Commission's rules and forms. This reduction will apply to all forms of litigation, regardless of whether it is related to the environment.

D. Presently, the instructions to the items of the forms mentioned in the preceding paragraph state that even though a legal proceeding does involve damages in an amount meeting the standard of economic materiality, information need not be given if the proceeding is considered "ordinary routine litigation incidental to the business." The Commission has adopted amendments to the instructions to the litigation items to state that administrative or judicial proceedings arising under any Federal, State or local provision regulating the discharge of materials into the environment, or otherwise specifically relating to the protection of the environment, shall not be considered "ordinary routine litigation incidental to the business," and shall be described if such proceeding is material to the business or financial condition of the registrant or if it involves primarily a claim for damages and the amount involved, exclusive of interest and costs, exceeds 10 percent of the current assets of the registrant and its subsidiaries on a consolidated basis.

E. At the present time, the Commission's disclosure forms contain no specific requirement for obtaining descriptions of environmentally-related proceedings, although certain descriptions are called for in Securities Act Release No. 5170. Securities Act Release 5235 proposed a revision to the litigation items to indicate, generally, that any environmentally-related administrative or judicial proceeding by governmental authority shall be deemed material and shall be described. The Commission at this time believes that the proposal on this matter is too broad and that the disclosures elicited by the proposal generally would cause the disclosure documents filed with the Commission to be excessively detailed without commensurate benefit to average investors. Accordingly, the Commission has revised the proposal published for comment to indicate that detailed disclosure of each such pro-

ceeding need not be given. Instead, issuers may set forth groupings of similar proceedings, specifying the number of such proceedings in each group, giving generic descriptions thereof, stating the issues generally involved, and, if such proceedings in the aggregate are material to the business or financial condition of the issuer, describing the effect of such proceedings on the issuer. Any such single proceeding, whether public or private, involving a claim for damages in excess of 10 percent of the issuer's current assets on a consolidated basis, or which otherwise may be material, should be individually described. The proposals under the instructions to the litigation headings included the following sentence: "Any such proceedings by private parties shall be described if material." Under the amendments adopted, that sentence is deleted as being redundant; other provisions of the amendments establish that private environmentally-related proceedings shall be described if they are material. The Commission intends to review the disclosures resulting from this requirement to determine whether subsequent modification is appropriate, in the public interest and for the protection of investors in such a manner as will promote the purposes of NEPA.

### III. *General.*

Under amendments to the description of business and the litigation items, the types of environmental provisions dealt with are those "regulating the discharge of materials into the environment, or otherwise relating to the protection of the environment." The Commission recognizes that this description, particularly the last clause thereof, is broad. Also, with respect to certain types of provisions, the description may not give a precise answer as to whether or not a given provision lies within the description quoted. To provide assistance to issuers, the staff will be available to respond to written inquiries.

The text of the amendments follows:

## FORM S-1

I. Item 9(a) of Form S-1 is amended by adding thereto a new Instruction 5 reading as follows:

5. Appropriate disclosure shall also be made as to the material effects that compliance with Federal, State and local provisions which have been enacted or adopted regulating the discharge of materials into the environment, or otherwise relating to the protection of the environment, may have upon the capital expenditures, earnings and competitive position of the registrant and its subsidiaries.

II. Item 12 of Form S-1 is amended to read as follows:

*Item 12. Legal Proceedings.*

Briefly describe any material pending legal proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject. Include the name of the court or agency in which the proceedings are pending, the date instituted, and the principal parties thereto, a description of the factual basis alleged to underlie the proceeding and the relief sought. Include similar information as to any such proceedings known to be contemplated by governmental authorities.

Instructions. 1. (No change)

2. No information need be given with respect to any proceeding which involves primarily a claim for damages if the amount involved, exclusive of interest and costs, does not exceed 10 percent of the current assets of the registrant and its subsidiaries on a consolidated basis. However, if any proceeding presents in large degree the same issues as other proceedings pending or known to be contemplated, the amount involved in such other proceedings shall be included in computing such percentage.

3. (No change)

4. Notwithstanding the foregoing, administrative or judicial proceedings arising under any Federal, State or local provisions regulating the discharge of materials into the environment or otherwise relating to the protection of the environment shall not be deemed "ordinary routing litigation incidental to the business" and shall be described if such proceeding is material to the business or financial condition of the registrant or if it involves primarily a claim for damages and the amount involved, exclusive of interest and costs, exceeds 10 percent of the current assets of the registrant and its subsidiaries on a consolidated basis. Any such proceedings by governmental authorities shall be deemed material and shall be described whether or not the amount of any claim for damages involved exceeds 10 percent of current assets on a consolidated basis and whether or not such proceedings are considered "ordinary routine litigation incidental to the business"; provided however, that such proceedings which are similar in nature may be grouped and described generically stating: the number of such proceedings in each group; a generic description of such proceedings; the issues generally involved; and, if such proceedings in the aggregate are material to the business or financial condition of the registrant, the effect of such proceedings on the business or financial condition of the registrant.

## FORM S-7

III. Item 5(a) of Form S-7 is amended to read as follows:

(a) Identify the business done and intended to be done by the registrant and its subsidiaries. In the case of an extractive enterprise, give appropriate information as to development, reserves and production. Appropriate disclosure shall be made with respect to (i) any portion of the business which may be subject to renegotiation of profits or termination of contracts or subcontracts

at the election of the Government, and (ii) the material effects that compliance with Federal, State and local provisions which have been enacted or adopted regulating the discharge of materials into the environment, or otherwise relating to the protection of the environment, may have upon the capital expenditures, earnings and competitive position of the registrant and its subsidiaries.

IV. Item 5(e) of Form S-7 is amended to read as follows:

(e) Briefly describe any pending legal proceedings to which the registrant or any of its subsidiaries is a party which may have a substantial effect upon the earnings or financial condition of the registrant, and any administrative or judicial proceedings (i) now pending or (ii) known to be contemplated by governmental authorities, arising under any Federal, State or local provisions referred to in (a)(ii) above, including the name of the court or agency, the factual basis alleged to underlie the proceeding and the relief sought.

## FORM S-9

V. Item 3 of Form S-9 is amended by adding thereto the following new paragraph (c):

(c) Appropriate disclosure shall be made as to the material effects that compliance with Federal, State and local provisions regulating the discharge of materials into the environment, or otherwise relating to the protection of the environment, may have upon the capital expenditures, earnings and competitive position of the registrant and its subsidiaries.

## FORM 10

VI. Item 1(b) of Form 10 is amended by adding thereto a new Instruction 6 reading as follows:

6. Appropriate disclosure shall also be made as to the material effects that compliance with Federal, State and local provisions which have been enacted or adopted regulating the dis-

charge of materials into the environment, or otherwise relating to the protection of the environment, may have upon the capital expenditures, earnings and competitive position of the registrant and its subsidiaries.

VII. Item 10 of Form 10 is amended as follows:

*Item 10. Legal Proceedings.*

Briefly describe any material pending legal proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject. Include the name of the court or agency in which the proceedings are pending, the date instituted, the principal parties thereto, a description of the factual basis alleged to underlie the proceeding and the relief sought. Include similar information as to any such proceedings known to be contemplated by governmental authorities.

Instructions. 1. (No change)

2. No information need be given with respect to any proceeding which involves primarily a claim for damages if the amount involved, exclusive of interest and costs, does not exceed 10 percent of the current assets of the registrant and its subsidiaries on a consolidated basis. However, if any proceeding presents in large degree the same issues as other proceedings pending or known to be contemplated, the amount involved in such other proceedings shall be included in computing such percentage.

3. (No change)

4. Notwithstanding the foregoing, administrative or judicial proceedings arising under any Federal, State or local provisions which have been enacted or adopted regulating the discharge of materials into the environment or otherwise relating to the protection of the environment, shall not be deemed "ordinary routine litigation incidental to the business" and shall be described if such

proceeding is material to the business or financial condition of the registrant or if it involves primarily a claim for damages and the amount involved, exclusive of interest and costs, exceeds 10 percent of the current assets of the registrant and its subsidiaries on a consolidated basis. Any such proceedings by governmental authorities shall be deemed material and shall be described whether or not the amount of any claim for damages involved exceeds 10 percent of current assets on a consolidated basis and whether or not such proceedings are considered "ordinary routine litigation incidental to the business"; provided however, that such proceedings which are similar in nature may be grouped and described generically stating: the number of such proceedings in each group; a generic description of such proceedings; the issues generally involved; and, if such proceedings in the aggregate are material to the business or financial condition of the registrant, the effect of such proceedings on the business or financial condition of the registrant.

**FORM 10–K**

VIII. Item 1(b) of Form 10–K is amended by adding thereto a new paragraph reading as follows:

(7) The material effects that compliance with Federal, State and local provisions which have been enacted or adopted regulating the discharge of materials into the environment, or otherwise relating to the protection of the environment, may have upon the capital expenditures, earnings and competitive position of the registrant and its subsidiaries.

IX. Item 5 of Form 10–K is amended as follows:

*Item 5. Legal Proceedings.*

Briefly describe any material pending legal proceedings, other than ordinary

routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject. Include the name of the court or agency in which the proceedings are pending, the date instituted, the principal parties thereto, a description of the factual basis alleged to underlie the proceeding and the relief sought. Include similar information as to any such proceedings known to be contemplated by governmental authorities.

Instructions. 1. (No change)

2. No information need be given with respect to any proceeding which involves primarily a claim for damages if the amount involved, exclusive of interest and costs, does not exceed 10 percent of the current assets of the registrant and its subsidiaries on a consolidated basis. However, if any proceeding presents in large degree the same issues as other proceedings pending or known to be contemplated, the amount involved in such other proceedings shall be included in computing such percentage.

3. (No change)

4. Notwithstanding the foregoing, administrative or judicial proceedings arising under any Federal, State or local provisions which have been enacted or adopted regulating the discharge of materials into the environment or otherwise relating to the protection of the environment, shall not be deemed "ordinary routine litigation incidental to the business" and shall be described if such proceeding is material to the business or financial condition of the registrant or if it involves primarily a claim for damages and the amount involved, exclusive of interest and costs, exceeds 10 percent of the current assets of the registrant and its subsidiaries on a consolidated basis. Any such proceedings by governmental authorities shall be deemed material and shall be described whether or not the amount of any claim for dam-

ages involved exceeds 10 percent of current assets on a consolidated basis and whether or not such proceedings are considered "ordinary routine litigation incidental to the business"; provided however, that such proceedings which are similar in nature may be grouped and described generically stating: the number of such proceedings in each group; a generic description of such proceedings; the issues generally involved; and, if such proceedings in the aggregate are material to the business or financial condition of the registrant, the effect of such proceedings on the business or financial condition of the registrant.

## FORM 8-K

X. Item 3 of Form 8-K is amended as follows:

*Item 3. Legal Proceedings.*

(a) Briefly describe any material legal proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries has become a party or of which any of their property has become the subject. Include the name of the court or agency in which the proceedings are pending, the date instituted, the principal parties thereto, a description of the factual basis alleged to under the proceedings and the relief sought.

Instructions. 1. (No change)

2. No information need be given with respect to any proceeding which involves primarily a claim for damages if the amount involved, exclusive of interest and costs, does not exceed 10 percent of the current assets of the registrant and its subsidiaries on a consolidated basis. However, if any proceeding presents in large degree the same issues as other proceedings pending or known to be contemplated, the amount involved in such other proceedings shall be included in computing such percentage.

3. (No change)

4. Notwithstanding the foregoing, administrative or judicial proceedings arising under any Federal, State or local provisions regulating the discharge of materials into the environment or otherwise relating to the protection of the environment, shall not be deemed "ordinary routine litigation incidental to the business" and shall be described if such proceeding is material to the business or financial condition of the registrant or if it involves primarily a claim for damages and the amount involved, exclusive of interest and costs, exceeds 10 percent of the current assets of the registrant and its subsidiaries on a consolidated basis. Any such proceedings by governmental authorities shall be deemed material and shall be described whether or not the amount of any claim for damages involved exceeds 10 percent of current assets on a consolidated basis and whether or not such proceedings are considered "ordinary routine litigation incidental to the business"; provided however, that such proceedings which are similar in nature may be grouped and described generically stating: the number of such proceedings in each group; a generic description of such proceedings; the issues generally involved; and, if such proceedings in the aggregate are material to the business or financial condition of the registrant, the effect of such proceedings on the business or financial condition of the registrant.

\* \* \* \* \* \*

The foregoing amendments are adopted pursuant to Sections 6, 7, 8, 10 and 19(a) of the Securities Act of 1933 and Sections 12, 13, 15(d) and 23(a) of the Securities Exchange Act of 1934. The amendments shall be effective with respect to reports and registration statements filed on or after July 3, 1973.

By the Commission.

Ronald F. Hunt
Secretary