## MILES LABORATORIES, Inc., v. FEDERAL TRADE COMMISSION et al.

### No. 18057.

District Court of the United States for the District of Columbia.

June 21, 1943.

James F. Hoge, of New York City, Preston B. Kavanagh and P. C. King, Jr., both of Washington, D. C. (Verne G. Cawley, of Elkhart, Ind., and Edwin Borchard, of New Haven, Conn., of counsel), for plaintiff.

Edward M. Curran, U. S. Atty., W. T. Kelly, Chief Counsel, Federal Trade Commission, Richard P. Whitely, Asst. Chief Counsel, Federal Trade Commission, and Cyrus B. Austin, all of Washington, D. C., for defendant.

LUHRING, Justice.

The plaintiff, an Indiana corporation, is now, and for more than twenty-five years last past has been, engaged in the manufacture, sale and distribution in interstate commerce of certain medicinal preparations known as "Dr. Miles' Nervine," "Dr. Miles' Nervine Tablets," and "Dr. Miles' Anti-Pain Pills" with annual sales in excess of $900,000, and a good will of more than $1,000,000.

Its product is packaged and sold in bottles, tins and cartons, which bear labels containing statements and representations with respect to the conditions of use recommended for the same, the active ingredients, the purposes for which the products are effective and the safe or proper dosage. Specimens of cartons, labels and package inserts, which constitute the complete packaging of said products, are filed with the complaint as Exhibits A-1 to A-3, inclusive. It is alleged that in this respect the plaintiff complies with all the provisions of the Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 301 et seq.

In so far as the plaintiff advertises these products, their advertisements include one of the following statements: "Full Directions on Package—Read Them" or "Read Full Directions on Bottle."

The defendant, Federal Trade Commission, composed of the individual defendants, acting through its Chief Trial Examiner, notified the plaintiff that its packages, labels and labeling failed adequately to reveal the potential danger of its products, and submitted a stipulation for the signature of the plaintiff wherein it would admit (a) that excessive use of "Dr. Miles' Nervine" and "Dr. Miles' Nervine Tablets" may result in mental derangement of the user and (b) that excessive use of "Dr. Miles' Anti-Pain Pills" may cause collapse or dependence upon said product and (c) that neither the "caution" appearing on its labels nor the advertisements disseminated by it include warnings to that effect.

The proposed stipulation contains an agreement that the plaintiff will forthwith cease and desist from "disseminating any advertisement pertaining to the preparations Dr. Miles' Nervine and/or Dr. Miles' Nervine Tablets * * * which fails clearly to reveal that said preparation or preparations should not be used in excess of the dosage recommended; that such excessive use may be dangerous, causing mental derangement and/or skin eruptions, and should not be taken by or administered to children"; and, with respect to Dr. Miles' Anti-Pain Pills, from disseminating any advertisement "which fails clearly to reveal that said preparation should not be used in excess of the dosage recommended; that such excessive use may be dangerous, causing collapse and/or dependence upon the drug, and that it should not be taken by or

administered to children." However, the proposed stipulation gives plaintiff the option to include such cautions or warnings on its labels and, in such case, the advertisements need contain only the cautionary statement: Caution, Use Only As Directed.

The defendants threaten, in event of refusal or failure on the part of the plaintiff to execute the stipulation, to institute proceedings immediately against said plaintiff.

The proposed stipulation entitled "stipulation as to the Facts and Agreement to Cases and Desist" is attached to the complaint and made part thereof and is marked Exhibit B.

The complaint characterizes the claims, demands and threatened action of the Commission as "illegal, unlawful, arbitrary and in excess of the powers and authority" vested in it (Par. 24), and points out, in paragraph 25, that if plaintiff were to sign the stipulation, its good will would be destroyed and it would be required at great expense to discontinue use of all labels, tins, cartons and advertising matter now on hand, and to obtain and recall from wholesalers, jobbers and dealers all of said products in their possession and attach new labeling thereto at an expense to it in excess of twenty-five thousand dollars ($25,000).

The complaint alleges (Par. 26) that if plaintiff refuses to sign the stipulation, it would be (a) subject to criminal prosecution; (b) required at great expense in money and time to defend; (c) receive adverse and harmful publicity; (d) required at great expenditures of money and time to try issues of fact which defendants are without legal authority to raise and have no jurisdiction to determine, and will suffer undue interference with its business and without means of a judicial determination of defendants' jurisdiction and authority, except at the conclusion of a long drawn-out and expensive proceeding before defendant and (e) if found guilty, be unable to obtain a judicial review if there is any evidence to support the charges, no matter how overwhelming the evidence it introduces to disprove the charges may be.

The plaintiff refused to sign the proposed stipulation on the ground that the actions of the defendants are illegal; and that the action of the Commission and its individual members is beyond the scope of statutory authority; and beyond the power conferred by statute upon the respective offices.

The relief sought is a declaratory judgment pursuant to Section 274d of the Judicial Code, as amended, 28 U.S.C.A. § 400, . that (a) defendants have no authority to determine the legality of the language used on the labeling of plaintiff's products; (b) that defendants have no authority to force plaintiff to vary such language; (c) that defendants exceed their authority in seeking to compel plaintiff to include in its advertising the warnings demanded by defendants; (d) that defendants have no lawful authority to require plaintiff to include in its advertising warnings concerning consequences which might result in the use of the products contrary to the directions on the labels, and (e) that plaintiff has fully complied with all legal requirements imposed by the Federal Trade Commission Act upon its advertising of its products.

The defendants move to dismiss the complaint on the grounds (1) that this court lacks jurisdiction over the subject matter of the complaint and (2) that the complaint fails to state a claim against the defendants upon which relief can be granted.

By the Act approved September 26, 1914, Congress created the Federal Trade Commission, defined its powers and prescribed its duties. Section 5 of that Act, as amended, 15 U.S.C.A. § 45(a), denounced "unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce" and declares them unlawful. The Commission is "empowered and directed to prevent persons, partnerships, or corporations [with certain exceptions not material here] from using unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."

It is to be noted that while the Congress defined certain of the words used in the Act, it did not undertake to define the expressions "unfair methods of competition" and "unfair or deceptive acts or practices." However, with reference to the latter expression, "unfair or deceptive acts or practices," it did provide that the "dissemination or the causing to be disseminated of any *false advertisement* within the provisions of subsection (a) of this section [15 U.S.C.A. § 52(a)] shall be an unfair or deceptive act or practice in commerce within the meaning of section 45 of this title." 15 U.S.C.A. § 52(b).

The term "false advertisement", for the purposes of sections 52, 53 and 54 of Title 15 U.S.C.A., is defined to mean "an advertisement, *other than labeling,* which is misleading in a material respect." 15 U.S.

C.A. § 55. In order to determine whether any advertisement is misleading "there shall be taken into account *(among other things)* not only representations made or suggested by statement, word, design, device, sound, or any combination thereof, but also the extent to which the advertisement fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the commodity to which the advertisement relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual." 15 U.S.C.A. § 55(a).

■ The dissemination of a "false advertisement" by a corporation otherwise than on the labels carried by its products is an unfair or deceptive act or practice which is declared unlawful and which the Federal Trade Commission is empowered and directed to prevent. "The term 'labeling' means all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C.A. § 321(m).

It appears that the plaintiff does advertise its products otherwise than by labeling, as above defined, through a publication designated "Miles New Weather Almanac and Hand Book of Valuable Information" "and/or other publications." Paragraph Two, Exhibit B.

The complaint does not exhibit the Almanac or other publications containing its advertisements but, as we have seen, it alleges that the plaintiff's advertisements include one of the following statements: "Full Directions on Package—Read Them" or "Read Full Directions on Bottle" or other similar cautionary directions. However, the "full directions" on the package or bottle do not clearly reveal the potential danger of the products when excessively used.

The Federal Trade Commission Act, 15 U.S.C.A. § 45(b), provides that "whenever the Commission shall have reason to believe that any * * * corporation has been or is using any unfair method of competition or unfair or deceptive act or practice in commerce, and if it shall appear to the Commission that a proceeding by it in respect thereof would be to the interest of the public, it shall issue and serve upon such * * * corporation a complaint stating its charges in that respect and containing a notice of a hearing upon a day and at a place therein fixed at least thirty days after the service of said complaint."

■ A proceeding under this section of the Federal Trade Commission Act is a special statutory proceeding which may only be brought by and before the Commission. There is no statutory provision authorizing such a proceeding to be brought in or reviewed by a District Court. No adversary proceeding between the Commission and the plaintiff could be brought in the District Court for the purpose of determining whether the practices referred to in the complaint and proposed stipulation constitute unfair methods of competition or unfair or deceptive acts or practices in commerce prohibited by the Federal Trade Commission Act. Therefore, unless such jurisdiction is conferred by the Declaratory Judgment Act, the District Court has no jurisdiction to determine issues, either of fact or of law, which would be presented by a proceeding upon complaint by the Commission.

■ It is well settled that the Declaratory Judgment Act is, not, in itself, a source of federal jurisdiction and did not enlarge the pre-existing jurisdiction of the federal courts. Doehler Metal Co. v. Warren, 76 U.S.App.D.C., 60, 129 F.2d 43; Utah Fuel Co. v. National Bituminous Coal Commission, 69 App.D.C. 333, 101 F.2d 426; Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321.

■ Furthermore, the action of the Commission in determining that it has "reason to believe" that plaintiff has been or is using unfair methods of competition or unfair or deceptive acts or practices in commerce is a judgment based upon an exercise of discretion, and is the first or preliminary step necessary in assuming jurisdiction. As is well said by Mr. Justice Miller in Utah Fuel Co. v. National Bituminous Coal Commission, supra [69 App. D.C. 333, 101 F.2d 432]:

"To permit judicial review, either by injunction or declaratory judgment, of every procedural, preliminary and interlocutory order or ruling by which a person may consider himself aggrieved, would afford opportunity for constant delays in the course of administrative proceedings and would render orderly administrative procedure impossible. Moreover, it would result in bringing to the courts such an avalanche of trivial procedural questions as largely to monopolize their time and energies. That

some injury may result from appellants being forced to await the entry of a final order before securing judicial review is a regrettable but not controlling factor under such circumstances."

■ The question of the Commission's jurisdiction to proceed will be passed on by the Commission. The plaintiff may raise that question in the proceeding before the Commission and obtain a ruling. If the Commission erroneously assume jurisdiction and issues an order to cease and desist, such an order and the proceedings upon which it is based.are subject to review by and only by a Circuit Court of Appeals of the United States. The jurisdiction of that court "to affirm, enforce, modify, or set aside orders of the Commission shall be exclusive." 15 U.S.C.A. § 45(d).

■ The plaintiff stresses the inconvenience and cost of requiring it to engage in the trial of a complaint before the Commission. Such an objection is not new and the courts have invariably held that inconvenience and expense of litigation is "part of the social burden of living under government." Petroleum Exploration, Inc. v. Public Service Comm., 304 U.S. 209, 58 S.Ct. 834, 841, 82 L.Ed. 1294; Bradley Lumber Co. v. National Labor Relations Board, 5 Cir., 84 F.2d 97, 100, certiorari denied 299 U.S. 559, 57 S.Ct. 21, 81 L.Ed. 411; Roche v. Evaporated Milk Ass'n, 63 S.Ct. 938, 87 L.Ed. ——, decided May 3rd, 1943.

The motion to dismiss must be sustained, and it is so ordered.