**BORDEN, INC., a corporation,
Plaintiff-Appellant,**

v.

**FEDERAL TRADE COMMISSION,
Defendant-Appellee.**

**No. 73-1502.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 25, 1974.

Decided May 1, 1974.

Stuart S. Ball, H. Blair White, Chicago, Ill., for plaintiff-appellant.

Harold D. Rhynedance, Jr., William A. Doying, Attys., Federal Trade Commission, Washington, D. C., James R. Thompson, U. S. Atty., Chicago, Ill., for defendant-appellee.

Before KILEY, Senior Circuit Judge, SPRECHER, Circuit Judge, and JAMESON, Senior District Judge.*

* Ssnior District Judge William J. Jameson of the District of Montana is sitting by designation.

JAMESON, Senior District Judge.

Borden appeals from an order dismissing Count I of its two-count complaint seeking declaratory and injunctive relief to restrain the Federal Trade Commission (Commission) "from any further proceedings" upon Count III of an administrative complaint issued against Borden on October 8, 1971.[1]

In November, 1965 Borden began selling private label fluid milk products in the Chicago area to stores of The Great Atlantic & Pacific Tea Company (A & P). On March 13, 1967 Borden was notified by the Commission that it was investigating whether these sales involved illegal price discriminations in violation of Section 2(f) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13(f), or sales as unreasonably low prices or at prices below cost for the purpose of eliminating or lessening competition, in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.[2] Pursuant to requests by the Commission, Borden furnished information and documentary evidence regarding its milk sales to A & P.

On June 1, 1971 Borden received a copy of a proposed Commission complaint, charging in Counts I and II that A & P had wrongfully induced discriminatory prices and in Count III that Borden and A & P had combined to effect price stabilization.[3] A formal complaint containing the same charges was filed on October 8, 1971. Borden was not charged with illegal price discrimination.

On October 26, 1972 Borden filed with the administrative law judge a motion to dismiss Count III of the Commission complaint for alleged violation of Commission Rule 2.6, 16 C.F.R. § 2.6, which provides:

"Any person under investigation compelled or requested to furnish information or documentary evidence shall be advised with respect to the purpose and scope of the investigation."

The administrative law judge denied this motion on February 13, 1973, and on April 24, 1973 denied Borden's motion for reconsideration or in the alternative for certification of the denial to the Commission pursuant to Rule 3.23, 16 C.F.R. § 3.23.

Borden commenced this action on May 8, 1973, alleging in Count I of its complaint that the "failure to provide the required notice and opportunity to submit information during the investigation was a clear and substantial breach of the requirements of the Commission's own Rule 2.6, and its unpublished rules and directives". Borden applied for a preliminary injunction. The Commission filed a motion to dismiss Count I for failure to exhaust administrative remedies.

In a well-reasoned opinion entered June 7, 1973 the district court denied the application for a preliminary injunction and granted the motion to dismiss, holding that "it is deprived of jurisdiction of Count I by the doctrine of exhaustion of administrative remedies".[4] On this appeal Borden challenges only the ruling on the motion to dismiss. We affirm.

■■ It is well settled that ordinarily courts will not interfere with an

---

1. The Commission initially contended that the dismissal of Count I was not appealable under 28 U.S.C. § 1292(a)(1) as an interlocutory order refusing an injunction, since Count II of the complaint remained as a basis for seeking injunctive relief. At oral argument the parties agreed that the issue with respect to appellate review is now moot, since the district court subsequently dismissed Count II of Borden's complaint.

2. On January 21, 1969 the Commission by formal resolution authorized a Commission investigation of Borden and A & P with re-

spect to possible price discrimination charges. Borden alleges that it was informed of this resolution in October, 1969.

3. It is undisputed that Borden was not given notice that it was under investigation for possible charges of illegal price stabilization until it received the proposed complaint on June 1, 1971.

4. Administrative hearings were commenced on June 11, 1973. The Commission completed its case in chief just prior to oral argument on this appeal. Borden's defense was scheduled to begin on March 4, 1974.

agency until it has completed its action[5] and that administrative remedies may be bypassed only if (1) the agency has clearly violated a right secured by statute or agency regulation, Leedom v. Kyne, 358 U.S. 184, 188–189, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958) ; Elmo Division of Drive-X Company v. Dixon, 121 U.S.App.D.C. 113, 348 F.2d 342, 346–347 (1965) ; (2) the issue involved is a strictly legal one not involving the agency's expertise or any factual determinations, Jewel Companies, Inc. v. F.T.C., 432 F.2d 1155, 1159 (7 Cir. 1970) ; McKart v. United States, 395 U.S. 185, 197–199, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) ; or (3) the issue cannot be raised upon judicial review of a later order of the agency, *Jewel, supra* at 1159. We agree with the district court that none of these exceptions are applicable here.

Borden argues that under Rule 2.6 it was entitled to notice that it was being investigated for illegal price stabilization and "to submit exculpatory or explanatory information" during the investigative stages of the Commission's proceedings. In support of this contention Borden relies upon an unpublished directive implementing Rule 2.6, which reads:

"As a matter of standard operating procedure, in any matter in which a recommendation for a complaint is contemplated the proposed respondent should be * * * afforded an opportunity to furnish information respecting the acts or practices involved prior to submitting the matter to the Commission with recommendation for complaint."

This directive is from a citation "of a recent staff directive" in E. Pollock, Pre-Complaint Investigations by the Federal Trade Commission, 45 Chicago Bar Record 379, 381–82 (1964). Prior to oral argument Borden filed a motion to enlarge the record pursuant to Rule 10(e) F.R.App.Pro. to include the provisions of Section 6–051.7B of the Commission's Administrative Manual, which was made available to Borden during the pendency of this appeal pursuant to a request for disclosure under the Freedom of Information Act, 5 U.S.C. § 552. Section 6–051.7B provides:

*"Notifying the Respondent.* When a recommendation for complaint issuance is contemplated, the respondent should be notified that an investigation is being made and given the opportunity to furnish information on the acts or practices involved some time before submitting the matter to the Commission with recommendation for complaint. Where this procedure is not followed, the reason must appear in the memorandum transmitting the proposed complaint and order."[6]

The request to the Secretary of the Commission for disclosure of the directive was made after the district

---

5. Borden's contention that no further administrative remedies are available is without merit. 16 C.F.R. § 3.54 (1973) prescribes the scope of review on appeals from initial decisions of administrative law judges. This would include a review of the judge's order denying the motion to dismiss the administrative complaint as to Borden, as well as adverse rulings with respect to the exclusion of evidence if obtained in violation of Rule 2.6.

6. By letter to counsel representing the Commission on the administrative complaint, Borden on February 22, 1973 requested voluntary disclosure of the directive mentioned in the Chicago Bar Record. This request was denied February 26, 1973 on the ground that "The Commission's internal directions and instructions to the staff are considered confidential." See 16 CFR § 4.10(a)(1) (1973). On March 15, 1973 Borden requested that the administrative law judge issue a subpoena duces tecum compelling production of the directive. This request was denied on April 18, 1973, the administrative law judge noting that the request for disclosure of confidential records should be addressed to the Secretary of the Commission. See 16 CFR § 4.11 (1973). No further action was taken by Borden until July 5, 1973, almost one month after the district court's dismissal of Count I of Borden's complaint on June 7, 1973. On that date Borden filed an appropriate request for disclosure with the Secretary of the Commission, and it was pursuant to this request that disclosure of Section 6–051.7B was obtained.

court's decision from which this appeal was taken. Rule 10(e) does not give this court authority to admit on appeal any document which was not made a part of the record in the district court. See *United States ex rel. Kellogg v. McBee*, 452 F.2d 134, 137 (7 Cir. 1971). The motion to enlarge the record accordingly is denied. In any event the staff directive as quoted in the Chicago Bar Record is substantially the same as Section 6–051.7B and was considered by the district court in determining the motion to dismiss.

Borden was fully apprised of the investigation of possible illegal price discrimination with respect to its milk sales to A & P. The Commission contends that Rule 2.6 in no way suggests that if the Commission staff in analyzing the evidence uncovers proof of additional or alternate violations, further notice must be given prior to notice through the proposed complaint. The staff directive, the Commission argues, is "a purely internal admonition designed to serve the efficient operation of the Commission rather than a mandatory rule conferring rights upon potential respondents".

█ The district court correctly noted that in deciding whether exhaustion of administrative remedies should be required the initial consideration is whether the agency has violated a clear right. Whatever the merits of the parties' claims with respect to Rule 2.6 and the staff directive, we agree with the district court's conclusion that:

"Borden's asserted right to pursue informal settlement and explanation

prior to the filing of a complaint does not appear plainly on the face of Rule 2.6. The unpublished rule cited as evidence of that interpretation simply states that a party *should* be given an opportunity to supply information respecting the matters under investigation. Granted that the latter rule begins with the phrase 'as a matter of standard operating procedure,' it is not clearly mandatory that such an opportunity be provided." [7]

Relying upon our decision in *Jewel, supra*, Borden contends that "it will be unable to raise the Commission's violation of Rule 2.6 on appeal of a final agency order." However, as the district court recognized, *Jewel* is distinguishable in a number of respects. We held in *Jewel, supra* at 1159, that exhaustion of administrative remedies was not required where the jurisdiction of the Federal Trade Commission was challenged on the ground that "one of the Commissioners did not properly exercise his statutory discretion in voting for the issuance of the complaint". We noted that review of a final order might not be adequate, since "if the question of the Commissioner's obligation is postponed until final appeal of a Commission order, the standard of review will be different", that is, "the court of appeals would only decide whether the final order is supported by the evidence and would not question the authority of the Commission in issuing the complaint." *Id.* In contrast, the issue here is one of the procedural propriety of the steps taken during the investigatory stage leading to an administrative complaint

---

7. The district court correctly pointed out that its conclusion is buttressed by the discretionary nature of 16 CFR § 2.21 (1973), which provides for informal settlements during the investigatory stage and states:

"§ 2.21. Voluntary compliance.

"(a) The Commission, when it has information indicating that a person or persons may be engaging in a practice which may involve violation of a law administered by it, and if it deems the public interest will be fully safeguarded thereby may afford such person or persons the opportunity to

have a matter disposed of on an informal nonadjudicatory basis.

"(b) In determining whether the public interest will be fully safeguarded through such informal administrative action, the Commission will consider: (1) The nature and gravity of the alleged violation; (2) the prior record and good faith of the parties involved; and (3) other factors, including, where appropriate, adequate assurance of voluntary compliance."

See also the Commission's explanatory statement of § 2.21, 34 Fed.Reg. 19044, November 29, 1969.

and may be raised on appeal from the Commission's final order.[8]

Judicial review of proceedings of the Federal Trade Commission is governed by 15 U.S.C. § 45(c), which provides for review of cease and desist orders by the courts of appeals. Section 10(c) of the Administrative Procedures Act, 5 U.S.C. § 704, provides:

"Agency action made reviewable by statute * * * [is] subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action."

If the administrative proceedings subsequently result in a cease and desist order against Borden, Borden will have an opportunity on review to raise the issue of whether the Commission violated Rule 2.6 and its staff directives in failing to give Borden an opportunity to present exculpatory evidence during the pre-complaint stage of the administrative process. We agree with the district court that "The issuance of the Commission's complaint would seem to constitute intermediate agency action and the decisions of the Administrative Law Judge [on Borden's motions to dismiss] would appear to be procedural rulings within the scope of the court of appeals' power to review under 5 U.S.C. § 704." See Bristol-Myers Company v. F.T.C., 469 F.2d 1116, 1117 (2 Cir. 1972); Frito-Lay, Inc. v. F. T. C., 380 F.2d 8, 10 (5 Cir. 1967).

In addition, the issue in *Jewel, supra* at 1159, was characterized as "inherently a legal one", involving "statutory construction". The district court correctly observed that:

"The nature of the legal question involved here differs in a significant way from that in *Jewel*. There, the legal question required the interpretation of a statute—a task to which the courts are accustomed and well suited and to which administrative agencies have no claim of expertise. 4 Davis § 30.01, at 241. In the area of interpretation of agency rules, however, the primary responsibility of interpretation rests with the agencies themselves and, as noted above, great weight is accorded their interpretations. Thus the determination of the jurisdictional issue in this case, unlike that in *Jewel*, is not susceptible to determination by the Court without delay."

Finally, the district court properly recognized that Borden's claim of irreparable injury based upon the cost and inconvenience of defending itself in administrative proceedings is not alone sufficient to justify judicial intervention in the administrative process. See Myers v. Bethlehem Corp., 303 U.S. 41, 51–52, 58 S.Ct. 459, 82 L.Ed. 638 (1938); and Renegotiation Board v. Bannercraft Clothing Co., 415 U.S. 1, 94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974), where the Court reaffirmed the rule of *Myers* that "Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."

We conclude that there are no exceptional circumstances which would justify Borden's attempt to bypass the administrative process, and that the district court properly dismissed Count I of Borden's complaint under the doctrine of exhaustion of administrative remedies.

Affirmed.

---

8. See Sterling Drug Inc. v. F.T.C., 146 U.S. App.D.C. 237, 251, 450 F.2d 698, 712 at n. 13 (1971) where the court noted that "the rule that agency decisions must be affirmed if supported by adequate findings of fact and substantial evidence in the record obviously does not apply where a proper hearing has not been held."