**BELTONE ELECTRONICS CORPORATION, a corporation, et al.,**
**Plaintiffs,**

v.

**FEDERAL TRADE COMMISSION**
**et al., Defendants.**

**No. 75 C 1230.**

United States District Court,
N. D. Illinois, E. D.

Sept. 10, 1975.

Donald A. Mackay, Sidley & Austin, Allan N. Lasky, Spivack & Lasky, Chicago, Ill., Ginsburg, Feldman & Bress, Washington, D. C., Don H. Wallach, New York City, for plaintiffs.

Samuel K. Skinner, U. S. Atty., William F. Conlon, Asst. U. S. Atty., Chicago, Ill., Robert E. Duncan, W. Baldwin Ogden, Federal Trade Commission, Washinton, D. C., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

By this action the plaintiffs, Beltone Electronics Corporation and its present and former officers and directors, Sam Rosen, David H. Barnow and Chester K. Barnow (hereinafter collectively "Beltone") seek a declaratory judgment that the defendants, Federal Trade Commission and its Commissioners (hereinafter either "FTC" or the "Commission")

have acted and are proceeding against Beltone in an unlawful manner and preliminary and permanent injunctive relief in implementation of the requested declaratory judgment. The plaintiffs assert that their claims arise under the Federal Trade Commission Act, 15 U.S. C.A. § 41 *et seq.* (Supp. Feb. 1975),[1] the Administrative Procedure Act, 5 U.S.C. §§ 551–559 and 701–706, and the due process clause of the Fifth Amendment to the Constitution of the United States and that the matter in controversy exceeds $10,000 exclusive of interest and costs (measured by the alleged injury to Beltone's extensive business operations). Accordingly, jurisdiction and venue are said to be here under 28 U.S.C. §§ 1331(a), 1357 and 2201, 2202 and 28 U. S.C. § 1391(e). The defendants do not question venue and their attack on jurisdiction is limited to the assertion that it is wanting because the plaintiffs have failed to exhaust their administrative remedies.

The plaintiffs have moved for a preliminary injunction pursuant to Rule 65, Fed.R.Civ.P., to restrain the defendants and staff from proceeding upon an adjudicative administrative complaint and proposed order which the Commission issued against Beltone on March 5, 1975. By their briefs the plaintiffs have limited the preliminary relief they seek to those portions of the Commission's complaint and proposed order which, if sustained, would require Beltone to make certain affirmative disclosures in its advertising.

The defendants, while opposing the plaintiffs' motion for preliminary relief, have countered with alternative motions to dismiss for failure to state a claim upon which relief can be granted or summary judgment. Rules 12(b)(1) and (6) and 56, Fed.R.Civ.P.

The parties appear to agree that there are no contested material issues of fact. What is presented is a purely legal question: When and under what conditions may a district court interfere with a proceeding pending before the FTC. However, to the extent required by Rules 52(a) and 65(d), Fed.R.Civ.P., the following shall constitute findings of fact as well as conclusions of law and reasons for the decision here rendered.

██ Under the Federal Trade Commission Act, the Commission has the authority to prevent "unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." 15 U.S.C.A. § 45(a)(1), (6) (Supp. Feb. 1975). The dissemination of false advertisements in commerce relating to food, drugs, and other devices is an unfair or deceptive act or practice. 15 U. S.C.A. §§ 52, 55(a)(1) (Supp. Feb. 1975). To enforce the mandate of the Act, the Commission has broad authority to conduct investigations concerning the conduct and practices of corporations, 15 U.S.C.A. § 46(a) (Supp. Feb. 1975), and the power to issue cease and desist orders if violations are established. 15 U.S.C.A. § 45(b) (Supp. Feb. 1975). In addition to its broad investigatory and adjudicatory powers, the Commission has explicit authority to promulgate Trade Regulation Rules. 15 U.S.C.A. § 57a (Supp. Feb. 1975). The procedures set out in Section 57a are the exclusive rule making authority of the FTC.

Beltone is an Illinois corporation with its principal place of business in Chicago. It manufactures hearing aids which are then sold to independent dealers. There are approximately 60 manufacturers or importers of hearing aids in the United States. In 1972, the FTC, pursuant to its advertising substantiation program ordered Beltone and 13 other manufacturers to provide factual substantiation for certain of their advertising claims. 15 U.S.C.A. § 46(b) (Supp. Feb. 1975), *amending* 15 U.S.C. § 46(b) (1970). Beltone filed its report with the Commission on September 22, 1972.

---

1. The Federal Trade Commission Act was recently amended by the Federal Trade Commission Improvement Act, § 202, Pub. L.No. 93–637 (Jan. 8, 1975).

On May 7, 1974, the FTC notified Beltone that "the Commission has determined to institute a formal proceeding" against Beltone. The notice was accompanied by a proposed complaint which alleged misrepresentations and failures to make certain affirmative disclosures in Beltone's advertisements. Five other hearing aid manufacturers, which, together with Beltone, comprise 40% of the market, were served with similar complaints.

On May 22, 1974, shortly after Beltone had received notice of the proposed complaint against it, the Commission announced that it was conducting an

> "industry-wide investigation to determine whether manufacturers, promoters, renters or sellers of hearing aids have been or are falsely advertising their products or using unfair or deceptive acts or practices in marketing them." [2]

On October 24, 1974 Beltone and four other manufacturers [3] that had been served with the proposed complaints presented to the Commission their "Petition for Rule Making and Request to Hold Proposed Complaints in Abeyance" in which they urged the Commission to proceed to rule making to develop standards of affirmative disclosures if they were in fact necessary. While that petition was before the Commission, amendments to the Federal Trade Commission Act dealing with rule making became effective. Pub.L. No. 93–637 (Jan. 8, 1975). On January 10, 1975, the Commission denied the petition without any statement of the grounds for the denial. One week later Beltone and the other four manufacturers filed a "Petition for Reconsideration . . ." which was denied on March 5, 1975,

again without any statement of the grounds for the denial. On the same date the Commission issued formal complaints and proposed orders against six manufacturers.[4] It is the complaint and proposed order issued against Beltone that is the focal point of the controversy here.

The complaint issued against Beltone asserts two theories of deceptive practices in advertising. The first is misrepresentations that relate specifically to hearing aids manufactured and distributed by Beltone. For example, many of Beltone's advertisements are alleged to represent either explicitly or implicitly that its hearing aids are new, unique, or superior to others in the market. The complaint alleges that Beltone's hearing aids are not new, unique or superior and it seeks a cease and desist order in respect to such representations. Plaintiffs do not challenge the authority of the Commission to proceed on those allegations.

The second and controversial theory of the Commission's complaint is the alleged need to make affirmative disclosures in advertising about any hearing aid. No manufacturer or seller of hearing aids presently makes such disclosures.

In Paragraph Nine of its complaint the Commission alleges as "truth and in fact":

\* \* \* \* \* \*

3. Many persons with a hearing loss will not receive any significant benefit from *any* hearing aid.

4. Many persons with a hearing loss will not be able to consistently distinguish and understand speech sounds in noisy or group situations by using *any* hearing aid.

---

2. FTC News Release, May 22, 1974.

3. Seeburg Industries, Inc., Textron, Inc., Radioear Corporation and Dahlberg Electronics, Inc.

4. Prior to the filing of this lawsuit the FTC followed the practice of issuing "proposed" complaints and orders. While the complaints were in this state the parties could attempt to negotiate a settlement and thus avoid litigation. If, however, an agreement could not be reached, the Commission would issue a formal complaint. This practice has recently been abandoned. Under current procedures a formal complaint is issued in the first instance; nevertheless, the parties shall have an opportunity to enter into settlement. 40 Fed.Reg. 15235 (Apr. 4, 1975).

5. In many instances, persons who hear but do not understand have a discrimination problem that cannot be helped by *any* hearing aid.

6. *No* hearing aid will restore natural hearing to the wearers thereof nor will it enable such persons to hear sounds naturally. (All emphasis supplied.)

And in Paragraph Thirteen it alleges:

The following statement constitutes a material fact with respect to the making of *any* claim regarding the hearing capabilities or hearing quality of *any* hearing aid:

Many persons with a hearing loss will not receive *any* significant benefit from *any* hearing aid. (Emphasis supplied.)

The Commission asserts that these alleged facts are material and that failure to disclose them renders Beltone's advertising false and thus an unfair and deceptive act or practice.

On the basis of these alleged facts and certain representations which Beltone allegedly makes in its advertising regarding the beneficial effect of its hearing aids and their ability to enable the wearer to distinguish speech sounds in noisy or group situations and to understand that which they hear and to hear "naturally," the Commission seeks an order prohibiting Beltone from disseminating any advertisement which represents directly or by implication, that:

[Beltone's] hearing aids will be beneficial to persons with a hearing loss, unless in immediate conjunction therewith it is clearly and conspicuously disclosed that *many* persons with a hearing loss will not receive *any* significant benefit from *any* hearing aid. Use of [Beltone's] hearing aids will enable persons with a hearing loss to distinguish or understand speech sounds in noisy situations, unless in immediate conjunction therewith it is clearly and conspicuously disclosed

that *many* persons with a hearing loss will not be able to consistently distinguish and understand speech sounds in noisy situations by using *any* hearing aid.

Use of [Beltone's] hearing aids will enable persons with a hearing loss to distinguish or understand speech sounds in group situations, unless in immediate conjunction therewith it is clearly and conspicuously disclosed that *many* persons with a hearing loss will not be able to consistently distinguish and understand speech sounds in group situations by using *any* hearing aid.

Makes *any* representation, directly or by implication, that *any* hearing aid may or will affect hearing capability or hearing quality unless the advertisement clearly and conspicuously discloses *in the exact language* . . . that: *Many* persons with a hearing loss will not receive any significant benefit from any hearing aid.[5]

The Commission's complaint against Beltone was referred to an administrative law judge for hearings. Beltone answered, on April 10, denying the material allegations of the complaint. Such was the posture of the matter before the Commission when the plaintiffs commenced this action on April 18.

The plaintiffs' complaint is in three counts, all of which are based on the foregoing facts. Count I asserts that the "institution [by the Commission] of adjudicative proceedings . . . to compel Beltone and only a few other manufacturers to make [disclosure] statements in their advertising which . . . are necessarily applicable to all hearing aid advertising, is arbitrary and capricious . . . and violates plaintiffs' Constitutional right to due process of law." Complaint ¶ 15. Count I also asserts that Beltone would be irreparably injured if it were forced to defend itself in a rule making proceeding aris-

5. Administrative Complaint No. 9014, Order, Part I, 1(a)(4)–(6), 1(b). All emphasis supplied.

ing out of the Commission's industry-wide investigation while at the same time defending itself in the individual adjudicatory proceeding. Complaint ¶ 16. Count II asserts that "[t]he Commission's notices of denial of [Beltone's Petition for Rule Making and Request to Hold Proposed Complaints in Abeyance] and the Petition for Reconsideration violated the Administrative Procedure Act, 5 U.S.C. § 555(e) . . . ." Complaint ¶ 19. Count III asserts that "[t]he Commission, although designating its proceeding 'adjudicative,' is in fact and in law engaged in 'rule making,' as that term is defined in the Administrative Procedure Act, 5 U.S.C. § 551(5) . . . [contrary to its] authority to engage in rule making . . . set forth in Section 18 of the Federal Trade Commission Act, as added by Section 202 of the . . . Federal Trade Commission Improvement Act, Pub.L. No. 93–637, § 202 . . . ." Complaint ¶¶ 21, 22.

All of the briefs of the parties on all of the pending motions were filed prior to June 24, 1975. On that date the Commission published in the Federal Register a notice of the initiation of a "proceeding for the promulgation of a Trade Regulation Rule for the Hearing Aid Industry." 40 Fed.Reg. 26646 (June 24, 1975). The notice was accompanied by the proposed rule. Id. 26646, *et seq.*

The proposed rule covers matters other than disclosures in advertising.[6] But there are disclosure provisions in the rule which virtually track the proposed order against Beltone. Thus Section 440.10(a)–(c) prohibits the dissemination of any advertisement:

(a) Which makes any general or specific representation that a hearing aid will or has the capacity to affect hearing capability or hearing quality, unless it is clearly and conspicuously disclosed that many persons with a hear-

ing loss will not receive any significant benefit from any hearing aid; *Provided, however,* that nothing herein shall prohibit a truthful representation that hearing aids can help many persons with a hearing loss.

(b) Which makes any representation that a hearing aid will enable a person with a hearing loss to distinguish or understand speech sounds in noisy situations, unless, in addition to the disclosure required by § 440.10(a), it is clearly and conspicuously disclosed that many persons with a hearing loss will not be able to consistently distinguish and understand speech sounds in noisy situations by using any hearing aid. (c) Which makes any representation that a hearing aid will enable a person with a hearing loss to distinguish or understand speech sounds in group situations, unless, and in addition to the disclosure required by § 440.10(a), it is clearly and conspicuously disclosed that many persons with a hearing loss will not be able to consistently distinguish and understand speech sounds in group situations by using any hearing aid.

Although the proposed rule was published and the proceedings attendant it were initiated subsequent to the commencement of this action, there is no reason why it should not be judicially noticed and considered in ruling on the pending motions. Indeed, the proposed rule sharpens the issues under Counts I and III of the plaintiffs' complaint and moots whatever vitality there was to Count II.

Turning first to Count II, the plaintiffs complain of the Commission's failure to give any statement of the grounds for its denials of Beltone's "Petition for Rule Making and Request to Hold Proposed Complaint in Abeyance" and its "Petition for Reconsideration . . . ." contending that the reasonless denials violated Section 6(e) of the Ad-

---

**6.** Thus, one section of the rule requires that dealers provide consumers with a right to

cancel purchases of hearing aids should they be dissatisfied with their performance.

ministrative Procedure Act, 5 U.S.C. § 555(e) (1970) which provides:

> Prompt notice shall be given of the denial in whole or in part of a . . . petition . . . of an interested person made in connection with any agency proceeding. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial.

They rely on *Natural Resources Defense Counsel, Inc. v. S. E. C.*, 389 F.Supp. 689, at 700 (D.D.C.1974), in which the court held that the SEC's denial of a petition for rule making required a statement of grounds under Section 6(e).

For their part, defendants contend in respect to Count II that no "agency proceeding" was pending within the meaning of Section 6(e) so that its mandate did not apply to the initial Petition or the Petition for Reconsideration.

■ To the extent that the petitions sought to have the proposed complaint "held in abeyance," the defendants' position is sound. On May 7, 1974, under a practice which has now been discontinued (see, note 4, *supra*), the Commission tendered to Beltone and others a complaint which it intended to file in the future. Until the complaint was filed no proceeding was pending. In effect this aspect of Beltone's petition sought a continuance or postponement of a proceeding which had not then commenced.

■ Insofar as the Petition and the Petition for Reconsideration sought the initiation of a rule making proceeding, they have now been honored. Thus, without agreeing or disagreeing with the decision in *Natural Resources Defense Counsel, Inc.*, *supra*, this aspect of the claim presented in Count II of the complaint is moot.

The contentions advanced by Counts I and III and the plaintiffs' motion for a preliminary injunction are not so easily disposed of. There the plaintiffs seek to be relieved of the burden of defending against the disclosure allegations of the complaint on the grounds that it is arbitrary and capricious for the Commission to single out only Beltone and five other manufacturers with regard to alleged advertising omissions which are industry wide and that the Commission is really engaged in rule making under the guise of adjudicating the complaint, contrary to the provisions of newly enacted Section 18 of the Federal Trade Commission Act. To those two grounds a third can now be added: that it is unfair to require Beltone simultaneously to respond individually to the disclosure allegations of the complaint and, as a part of the industry, to the proposed rule, when it is clear that the former will be subsumed by the latter if it is adopted.

At the threshold of these contentions is the defendants' assertion that these are issues reviewable only after the completion of the Commission's adjudicatory proceeding against Beltone and then by an appropriate court of appeals and not this court. 15 U.S.C. § 45(c) (1970).

■ Both sides agree that as a general rule a party is not entitled to judicial review of a supposed or threatened administrative injury until the prescribed administrative remedy has been exhausted. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S. Ct. 459, 82 L.Ed. 638 (1938); *Borden v. F. T. C.*, 495 F.2d 785, 786 (7th Cir. 1974); *Jewel Companies v. F. T. C.*, 432 F.2d 1155, 1156–57 (7th Cir. 1970). There are, however, a number of well established exceptions to the exhaustion requirement. Thus, as the Court of Appeals for this Circuit held in the leading case of *Borden v. F. T. C.*, *supra*:

> It is well settled that ordinarily courts will not interfere with an agency until it has completed its action and that administrative remedies may be bypassed only if (1) the agency has clearly violated a right secured by statute or agency regulation, *Leedom v. Kyne*, 358 U.S. 184, 188–89, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); *Elmo Division of Drive-X Company v. Dixon*, 121 U.S.App.D.C. 113, 348 F.2d 342,

346–347 (1965); (2) the issue involved is a strictly legal one not involving the agency's expertise or any factual determinations, *Jewel Companies, Inc. v. F. T. C.*, 432 F.2d 1155, 1159 (7 Cir. 1970); *McKart v. United States*, 395 U.S. 185, 197–199, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); or (3) the issue cannot be raised upon judicial review of a later order of the agency, *Jewel, supra*, at 1159.[7]

It is with these exceptions in mind that Counts I and III of the plaintiffs' complaint must be judged.

▉ Of course, the Commission's action in issuing the complaint against Beltone is discretionary and, standing alone, is not reviewable short of review at the conclusion of the adjudicatory proceeding. *F. T. C. v. Universal-Rundle Corp.*, 387 U.S. 244, 249–250, 87 S. Ct. 1622, 18 L.Ed.2d 749 (1967); *Ostler Candy Co. v. F. T. C.*, 106 F.2d 962, 965 (10th Cir. 1939), *cert. den.*, 309 U.S. 675, 60 S.Ct. 713, 84 L.Ed. 1020 (1940); *Miles Laboratories v. F. T. C.*, 50 F. Supp. 434, 437–38 (D.C.1943), *aff'd*, 78 U.S.App.D.C. 326, 140 F.2d 683 (1944), *cert. den.*, 322 U.S. 752, 64 S.Ct. 1263, 88 L.Ed. 1582. And the fact that the Commission has proceeded against only Beltone and five other manufacturers does not constitute action so arbitrary and capricious as to warrant collateral judicial intervention such as is sought here. In *Universal-Rundle, supra*, the Supreme Court held that even if an entire industry was engaged in an illegal course of conduct, the Commission had the authority to proceed against only one member of the industry. And while the Court went on to say that the Commission does not have the unbridled power to institute a proceeding which arbitrarily destroys one of many law violators in a particular industry (387 U. S. at 251, 87 S.Ct. 1622), that is not this case. Here the six against whom the Commission has proceeded comprise

40% of the market. Thus, as in *Moog Industries v. F. T. C.*, 355 U.S. 411, 413, 78 S.Ct. 377, 379, 2 L.Ed.2d 370 (1957), "whether all firms in the industry should be dealt with in a single proceeding or should receive individualized treatment are questions that call for discretionary determination by the [Commission]."

▉ Nor does the nature of the relief which the Commission seeks against Beltone and the other five alter this conclusion. While requirements that manufacturers and sellers of products make affirmative disclosures of negative aspects of their products in their advertising are of fairly recent origin, their premises are not novel. The jurisprudence of the vendor's duty to disclose and misrepresentation by omission runs deep in the common law. The Commission has successfully urged it under the Federal Trade Commission Act in adjudicatory proceedings involving individual products, see, *J. B. Williams v. F. T. C.*, 381 F.2d 884 (6th Cir. 1967) (Geritol); *Keele Hair and Scalp Specialists v. F. T. C.*, 275 F.2d 18 (5th Cir. 1960) and *Erickson v. F. T. C.*, 272 F.2d 318 (7th Cir. 1959) (anti-baldness products), and has embraced it on an industry wide basis by way of a Trade Regulation Rule. See, *F. T. C. Proposed Trade Regulation Rule on Unfair or Deceptive Advertising or Labeling of Cigarettes in Relation to Health Hazards of Smoking*, 29 Fed.Reg. 8324 (1964). This case appears to present a third approach. The Commission has elected to proceed against some but not all of the members of an industry in respect to alleged failures to disclose which the respondents assert are industrywide shortcomings. That does not render the proceedings arbitrary, for our experience teaches that, on occasion, a case by case approach to a particular type of conduct has advantages over immediate legislative prohibition or regulation.

7. 495 F.2d at 786–87. A fourth exception to the exhaustion doctrine may be where agency action unduly interferes with the conduct

of foreign relations. *McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U. S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963).

■ In short, then, the plaintiffs' complaint that Beltone has, along with others comprising 40% of the hearing aid market, been singled out for prosecution on a new issue raises at best a question of Commission discretion which, if reviewable at all, can be reviewed only under the statute, 15 U.S.C. § 45(c) (1970), upon completion of the administrative proceedings.

■ The pendency of simultaneous proceedings does not strengthen the plaintiffs' position. By Sections 5 and 18 of the Federal Trade Commission Act, Congress has specifically authorized the Commission to conduct adjudicative proceedings and to promulgate Trade Regulation Rules. 15 U.S.C.A. §§ 45, 57a (Supp. Feb. 1975). There is nothing improper in the Commission's concurrent use of the two procedures, *Lehigh Portland Cement Co. v. F. T. C.*, 291 F. Supp. 628, 632 (E.D.Va.1968), *aff'd*, 416 F.2d 971 (4th Cir. 1969), even if, as here, they appear to have a common objective.

Beltone has been called to book by the Commission in respect to alleged false advertising apart from the question of non-disclosure. Those alleged violations should be heard promptly, and the plaintiffs concede as much for they do not challenge the authority of the Commission to proceed upon them.

■ Having brought the false advertising charges against Beltone, the Commission has also alleged non-disclosure to the end that all of the allegations can be adjudicated in a single proceeding. Certainly avoidance of a multiplicity of actions is to be commended and not castigated as arbitrary and capricious.

Should the plaintiffs prevail here on the timing of the Commission trial of the issues of non-disclosure, one of two equally undesirable results would ensue. Two adjudicatory proceedings could result—one of the false advertising claims, the other to enforce the proposed rule when it becomes final. Or, the trial of the false advertising claims could await the trial on enforcement of the proposed rule, again when it becomes final. It is not amiss to note in this context that the rule proceedings may move slowly.

*Marco Sales, supra*, upon which the plaintiffs heavily rely, is not analogous to the situation here. In the first place, *Marco* was a direct review of final agency action. In that action the Commission ordered Marco to cease and desist the operation of a punch card lottery. In 1969, some 18 months before the cease and desist order was issued, the Commission had promulgated strict rules regulating similar lotteries, but did not ban them. The Commission attempted to justify the disparate treatment given Marco and the industry generally by relying on *Moog* and *Universal Rundle*. The court rejected the argument.

Both of these cases involve adjudicatory proceedings and stand for the proposition that even if all the petitioner's competitors were engaged in the same practice, it is no defense to the petitioner that the cease and desist order is directed to him alone. Obviously, the Commission cannot be expected to bring simultaneous proceedings against all of those engaged in identical practices. These cases would be in point if Marco were urging that others engaged in identical practices competing with him, were not similarly pursued by the Commission. Petitioners do not so argue. They argue rather that those engaged in the same activity are regulated while Marco is annihilated. In short, it is not that the Commission has failed to act against others but that it has adopted a positive regulatory approach to them totally inconsistent with its approach toward the petitioners.

\* \* \* \* \* \*

The arbitrary character of the Commission's action here consists of its total failure to even advert to, much less explain, its reason for the rigid ad hoc adjudicatory stance it adopted toward the petitioner and the flexible tolerance its industry regulations dis-

played to those utilizing the same or similar devices. 453 F.2d at 6.

■ Clearly the abuse of discretion found in *Marco* is distinguishable from the agency action challenged here. True there is the parallel that the FTC has taken a stance against the entire hearing aid industry as evidenced by its proposed rule, while it proceeds on the identical question against Beltone and five others by way of individual adjudication. But the vice in *Marco* was that the individual order to cease and desist was far more severe than the general rule. It was inconsistency in the name of individualized treatment that the court rejected. Here the vice, if it be one, is that the proposed rule and the proposed order against Beltone are in all essential respects identical when it comes to disclosures. Furthermore, as in *Marco,* should the Commission enter an arbitrary order against Beltone at the conclusion of the administrative proceeding, Beltone may obtain direct review of it.

Accordingly, the plaintiffs' complaint that Beltone is being called upon to respond in simultaneous proceedings again raises nothing more than a question of Commission discretion which cannot be reviewed in these collateral proceedings.

There remains Count III of the plaintiffs' complaint which asserts that the adjudicatory proceeding against Beltone is in fact a rule making proceeding being conducted in violation of the Administrative Procedure and the Federal Trade Commission Acts.

■ Some judicial uncertainty existed as to the rule making authority of the Commission until its recent codification by the Magnuson Moss-Warranty Federal Trade Commission Improvement Act, Pub.L.No. 93–637, § 202 (Jan. 4, 1975), Federal Trade Commission Act, § 18, 15 U.S.C.A. § 57a (Supp. Feb. 1975). Section 18 provides:

(a)(1) The Commission may prescribe—

(A) interpretive rules and general statements of policy with respect to unfair or deceptive acts or practices in or affecting commerce . . . ., and

(B) rules which define with specificity acts or practices which are unfair or deceptive acts or practices in or affecting commerce. . . .

(2) The Commission shall have no authority under this chapter, other than its authority under this section, to prescribe any rule with respect to unfair or deceptive acts or practices in or affecting commerce.
. . .

When the Commission decides to adopt a Trade Regulation Rule under (a)(1), it must comply with the procedures set out in subsection (b), which include publication of the proposed rule and the reasons therefor in the Federal Register, informal hearings, the submission of written data, views, and arguments by interested persons, and the promulgation of a final rule based on the rule making record together with a statement of the rule's basis and purpose.

■ The Commission's authority to prescribe Trade Regulation Rules is limited to the procedures delineated in Section 18. This fact was stressed in the House Report on the bill.

Section 202 replaces the existing rulemaking authority of the FTC under section 6(g) of the Act with a new section 18 which authorizes the FTC to issue rules defining with specificity the acts or practices which are unfair or deceptive and which are within the scope of section 5(a)(1) of the Federal Trade Commission Act. . . . This rulemaking authority would be the exclusive substantive rulemaking authority of the FTC under the Federal Trade Commission Act.

H.R.Rep.No. 93–1107, 98d Cong.2d Sess. 1974, 1974 U.S.Code Cong. & Adm.News, p. 7727.[8] In limiting the rule making au-

8. *Accord,* Conference Rep. No. 93–1408, 93d Cong.2d Sess. 1974, 1974 U.S.Code Cong. & Adm. News, p. 7763.

thority of the FTC, Congress expressed the view that rule making was the most desirable means of obtaining the broad objectives of the Act.

> Substantial sentiment has developed over the years that in many instances the desirable manner of implementing the broad standards of Section 5(a) of the Federal Trade Commission Act should be by means of rule-making with the complaint-cease and desist order procedure used as a means of enforcing the rules. Rule-making offers the obvious advantages that (a) each person who could be affected by the proposed rule is afforded an opportunity to be heard on it in a well defined and well understood procedure, (b) the rules are developed in advance of their application to any person or practice and apply with uniformity, and (c) judicial review of any rule is available as well as of the procedures used in adopting it. *Id.* at 7714.

In this regard, Congress echoed the sentiment of the FTC itself. When it proposed its rule regarding disclosure of the health hazards of smoking cigarettes it said:

> A rulemaking proceeding affords an economical method of consolidating common issues of fact and law in a streamlined, but comprehensive and fair, proceeding having few of the cumbersome attributes of litigation. Such a proceeding does not present questions of assessing individual guilt or innocence for past conduct, the strict procedural and evidentiary requirements of litigation are inapplicable.
>
> \*  \*  \*  \*  \*  \*
>
> [Adjudicative proceedings would be inequitable since] the principal considerations . . . pertain more or less equally to all of the cigarette manufacturers, who are, of course, competitors. The situation plainly calls for uniform consolidated treatment, not separate lawsuits. 29 Fed. Reg. at 8368–69 (1964).

Furthermore, the Supreme Court has recognized a general policy preference in favor of rule making. In *S. E. C. v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Court considered the power of the SEC to formulate new rules of conduct in an adjudicatory proceeding. It stated that since an agency has the power to make rules prospectively through its rule making power it has less reason to rely on ad hoc adjudication to formulate new standards of conduct. Filling in the interstices of legislation should be performed, as much as possible, through the quasi-legislative promulgation of rules to be applied in the future. But a rigid requirement always requiring prospective rule making would reduce the flexibility of the agency to deal with specialized problems as they arise. 332 U.S. at 202, 67 S.Ct. 1575. The Court then went on to state some of the circumstances under which adjudication would be a proper method to formulate new rules of conduct.

> In other words, problems may arise in a case which the administrative agency could not reasonably foresee problems which must be solved despite the absence of a relevant general rule. Or the agency may not have had sufficient experience with a particular problem to warrant rigidifying its tentative judgment into a hard and fast rule. Or the problem may be so specialized and varying in nature as to be impossible of capture within the boundaries of a general rule. In those situations, the agency must retain power to deal with the problems on a case-to-case basis if the administrative process is to be effective. . . . And the choice made between proceeding by general rule or by individual, *ad hoc* litigation is one that lies primarily in the informed discretion of the administrative agency. See *Columbia Broadcasting System v. United States*, 316 U.S. 407, 421, 62 S.Ct. 1194 [1202], 86 L.Ed. 1563.

332 U.S. 202–203, 67 S.Ct. 1580; *N. L. R. B. v. Bell Aerospace Co.,* 416 U.S. 267, 294, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). *See also, N. L. R. B. v. Wyman Gordon Co.,* 394 U.S. 759, 765–766, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969) (Fortas, J.).

Accepting the general desirability of the rule making approach to the formulation of general standards of conduct, the question is whether by explicitly conferring rule making authority on the Commission by the enactment of Section 18 of the Act, the Congress reduced the Commission's authority to proceed on a case by case basis under Section 5 of the Act. Stated somewhat differently, does the FTC with its express power to promulgate rules under Section 18, nevertheless have the power under Section 5 to grapple with fact situations which may result in decisions which articulate general standards of conduct? In *Chenery, supra,* the Supreme Court concluded that the SEC had the power to adjudicate cases from which emerged general standards of conduct despite the fact that Congress had granted the agency explicit rule making power. Here the circumstances supporting non-interference with the exercise of the Commission's discretion are even more compelling than in *Chenery.*

Neither the adjudicatory nor the rule making proceedings have been held. No factual record of any kind is available. True the plaintiffs urge that non-disclosure is industrywide and the disclosure provisions of the Commission's proposed order which has been served on Beltone are as broad as its proposed rule. But absent an administrative hearing of either type it would be presumptious for a court to conclude that the Commission, which is the primary adjudicator of facts in such disputes, and to whose expertise courts must defer, will not encounter problems in either proceeding which it could not reasonably foresee, or will not conclude that it has not had sufficient experience with the particular problem to warrant rigidifying its tentative judgment into a hard and fast rule or will not, contrary to the plaintiffs' predictions, encounter varying fact situations which require individualized treatment.

Therefore, insofar as the plaintiffs' Count III rule making contention is concerned, Section 18 prescribes the procedure to be followed by the Commission when it exercises its rule making authority, but Section 18 does not diminish the Commission's authority to proceed on a case by case basis in appropriate circumstances. On the record here no showing has been made that the circumstances are so inappropriate as to warrant prehearing collateral judicial interference with the Commission's judgment.

Under *Borden v. F. T. C., supra,* a district court should not interfere with an administrative proceeding unless the agency has clearly violated the law, the issue does not involve agency expertise or factual determinations or adequate judicial review will not be available upon later review of the agency's order. The plaintiffs have failed to meet any of these standards. The Commission is acting within the authority granted it by the Congress and it is not proceeding in an arbitrary and capricious manner against Beltone. Although the facts underlying the parties' presentation of the issues here are not in dispute, the potential for fact variations and the need for Commission expertise are inherent in the entire subject of advertising disclosures in the hearing aid industry. Finally, adequate judicial review of both the rule making and adjudicatory proceedings are available upon the completion of the proceedings.

For the foregoing reasons the plaintiffs' motion for a preliminary injunction is denied, the defendants' alternative motions to dismiss and for summary judgment are granted and judgment will enter dismissing the action.